USCA1 Opinion

 

 [NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT] United States Court of Appeals For the First Circuit ____________________No. 97-2114 DAKA, INC., Plaintiff - Appellee, v. SERVICE AMERICA CORPORATION, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy J. Gertner, U.S. District Judge] ____________________ Before Torruella, Chief Judge, Selya and Stahl, Circuit Judges. _____________________ Samuel D. Rosen, with whom Paul, Hastings, Janofsky & Walker LLP, John J. Rosenberg, Whitney R. Given and Epstein Becker & Green, P.C. were on brief for appellant. Jeffrey B. Loeb, with whom Amy C. Cashore and Ardiff & Morse, P.C. were on brief for appellee. ____________________ June 18, 1998 ____________________ Per Curiam. On or about July 30, 1993, Daka, Inc. ("Daka") and Service America Corporation ("SAC") entered into a commercial contract for Daka's purchase of SAC's Educational Food Service Division. By the closing date, Daka had not yet finished reviewing all of the food service sub-contracts that it would be assuming after the sale, so the parties included a provision which allowed the terms of the contract to be modified after Daka finished its due diligence review of the sale. The commercial contract between Daka and SAC was so modified by a September 23, 1993 Letter Agreement which is at issue in this appeal. The Letter Agreement was created because Daka and SAC both recognized the possibility that one of the contracts to which Daka had become successor, the University of Florida food service contract ("UF contract"), would be terminated by the end of 1995, in which case Daka would lose certain fixed assets that had been invested at the University of Florida. To provide "full protection" for these assets in the event of a termination of the UF contract, the parties agreed that SAC would pay Daka a sum based upon the unamortized value of those assets within ten days of any date of termination by the University. On May 10, 1995, the University of Florida terminated its contract with Daka. Both parties agree that, within ten days, SAC was obligated to provide Daka with the unamortized value of Daka'a unprotected assets at the University of Florida site. The only dispute in this case involves the method of computing the unamortized value of those unprotected assets. The Letter Agreement states that "[t]he unamortized balance of such assets as of July 1993, July 1994, and July 1995, which shall be used as a guide for determining the actual unamortized balances of the date of termination is shown below as 'Additional Protection Required.'" Under "Additional Protection Required," the agreement provides that on July 30, 1993, the unamortized value of the assets will be $342,946, that on July 30, 1994, the unamortized value of the assets will be $300,488, and that on July 30, 1995, the unamortized value of the assets will be $239,543. Thus, the parties to the Letter Agreement foresaw this potential conflict over the valuation of the unamortized value of the assets, and provided a guide for determining that value. Despite the fact that the agreement provides that the guide "shall be used" (emphasis added) to determine the "additional protection required" (emphasis added), SAC argues that the agreement should be interpreted to require a valuation of the unamortized value of the assets based upon Daka's tax returns and depreciation schedules, as well as accounting for any amounts received by third parties for assets related to the UF contract. SAC essentially argues that the court should ignore the guide provided in the Letter Agreement. In support of its interpretation of the contract, SAC stresses that the guide was provided only to aid in determining the "actual unamortized balances" (emphasis added) of the assets. According to SAC, "actual unamortized balances" cannot be determined without amortization schedules. This argument fails to take into account the most straight-forward interpretation of the word "actual" in the context of the Letter Agreement at issue. Because the "guide" only specifies the Additional Protection required on three sample dates, a reader must extrapolate from that limited data set in order to determine the protection required on any other date. Thus, whenever the UF contract is terminated, the "actual" unamortized balance of the assets must be determined by reference to the three "sample" unamortized balances provided within the letter agreement. This way, the phrase "actual unamortized balances" makes sense without having to resort to Daka's amortization schedules or third-party sales agreements. This interpretation is the most logical interpretation of the Letter Agreement because there is no implication in that agreement that outside sources should be referenced to value these assets, and such a method would be inconsistent with the agreement. If the value of Daka's unprotected University of Florida assets was supposed to be determined by reference to amortization schedules and third-party sales agreements, there would have been no reason to include such a detailed guide to make the same valuation without using those sources. It also would have been counter-intuitive to require, rather than merely allow for, the guide's usage, and to refer to the sample figures as "Additional Protection Required." Furthermore, the absence of any references to amortization schedules in the Letter Agreement is more than conspicuous under SAC's interpretation. We conclude that the Letter Agreement clearly and unambiguously provides that, in the event of a termination of the UF contract, SAC must pay to Daka a sum extrapolated from the figures in the guide provided. We therefore affirm summary judgment in favor of Daka. See United States Liab. Ins. Co. v. Selman, 70 F.3d 684, 687 (1st Cir. 1995) ("[I]t is for the court to determine whether the terms of an integrated agreement are unambiguous and, if so, to construe them according to their plain meaning"); Cody v. Connecticut Gen. Life Ins. Co., 439 N.E.2d 234, 237 (Mass. 1982) (same). One point that is ambiguous in the Letter Agreement is the manner in which the extrapolation is to be made. Indeed, coming up with the correct mathematical formula to apply has caused much consternation to the district court and the parties in this case. In the end, however, this consternation proves to be much ado about nothing. The district court explained that, since the guide provides for $60,945 of depreciation from July 30, 1994 until July 30, 1995, and the UF contract was terminated on the 284th day of that year-long period, the fraction 284/360 should be multiplied by $60,945, and that product subtracted from $300,488 (the "Additional Protection Required" for July 30, 1994) in order to determine the actual unamortized balance of the assets on May 10, 1995. According to the district court's formula, Daka was owed $252,394 after the May 10, 1995 termination. The use of 360 as the denominator of the fraction in this equation has been a point of contention in this litigation. This figure was supposedly chosen by the district court to represent the length of the fiscal year in the food services industry. SAC argues that the fiscal year in the industry alternates between 364 days and 371 days, but has never been 360 days. It is unclear, however, why the length of the fiscal year should enter into this equation at all, when the data points in the guide are each separated by exactly 365 days. Depending upon whether 360, 364, 365 or 371 days are used in the equation, the calculation produces a figure between $252,394 and $253,834 which represents the amount owed to Daka under the Letter Agreement. However, in the end, the length of year used in the calculation of the actual unamortized value of the assets is irrelevant. After the UF contract was terminated, Daka demanded payment from SAC of only $248,177. Daka repeated this demand in the district court. This amount is thousands of dollars less than Daka would be owed according to any logical extrapolation from the Letter Agreement's guide. In the district court, Daka admitted that it initially demanded less money than it was entitled under the Letter Agreement due to a mathematical error in formulating that demand. Nonetheless, it declined to amend its prayer for relief and continued to request only $248,177 from SAC. On appeal, Daka asks this court to affirm the district court's judgment, in full satisfaction of its claim, despite the fact that it may be entitled to more money under the Letter Agreement. Even if Daka had asked this court to correct the district court's award, we would have been unable to do so. See Nelson v. Taglienti, 994 F.2d 42, 45 n.7 (1st Cir. 1993) (when appellees do not cross-appeal, they fail to preserve any issues for themselves on appeal). Thus, while the agreement may be ambiguous regarding the correct formula to use in extrapolating from the guide's sample dates to the actual date of termination, there is no genuine dispute that Daka is entitled to a minimum of $248,177 from SAC.  Thus, after careful consideration of the record, briefs and argument in this case, we affirm the district court's award of summary judgment in favor of the plaintiff-appellee, Daka, Inc. Costs to be borne by appellant.