In re Mark NELSON, Debtor,

Mark NELSON, Appellant,

v.

Linda Wihbey TAGLIENTI, et al., Defendants, Appellees.

No. 92–2408.

United States Court of Appeals, First Circuit.

Heard April 9, 1993.

Decided June 3, 1993.

■

Domenic S. Terranova, Andover, MA, for appellant.

Linda T. Wihbey, with whom Ring, Rudnick & Grefe, P.C., Philipp G. Grefe, and Ring & Grefe, P.C., Boston, MA, were on brief for defendants, appellees.

Before BREYER, Chief Judge, SELYA and STAHL, Circuit Judges.

STAHL, Circuit Judge.

Plaintiff-appellant Mark Nelson (Mark) claims that the bankruptcy and district courts erred in dismissing his suit for damages against his former wife, Paula Nelson Fiorenza (Paula), and her attorneys. He alleges that defendants willfully violated an automatic stay provided by the bankruptcy code when they instituted equity actions in state court which interfered with the sale of the former marital home. We disagree and affirm.

## I.

### Background

The Nelsons were married on February 2, 1985, and resided at 16 Dorchester Street, Wilmington, Massachusetts. On February 12, 1991, they executed a marital agreement which subsequently became part of a divorce judgment. Under the terms of that agreement, Mark was obligated to pay Paula $200 weekly as child support for the benefit of their eight year-old daughter. The agreement further obligated him to maintain the first and second mortgages on the former marital home, and actively to list and market the property for sale.[1]

On March 22, 1991, for $1.00 consideration, Mark transferred all of his right, title and interest in 16 Dorchester Street to his father, George Nelson, as trustee.[2] When Mark failed to make child support payments, Paula began enforcement efforts in the Middlesex County Probate and Family Court. On May 8, 1991, and October 24, 1991, the court entered judgments of contempt against him. The second contempt judgment resulted in a 120–day jail sentence, suspended until November 8, 1991, "to see if all arrears are paid." A hearing on the contempt judgment was continued to November 12, 1991. On November 8, 1991, Mark filed a voluntary, "skeleton"[3] petition for bankruptcy under Chapter 13 in the Bankruptcy Court for the District of Massachusetts. On November 12, 1991, Mark filed in the Probate Court a suggestion of bankruptcy and a motion to continue the pending contempt action. Subsequently, on November 25, 1991, Paula proceeded to file another action in that court seeking an attachment and temporary restraining order to prevent the transfer of the

---

1. According to defendants' brief in bankruptcy court, the agreement also provided that Paula Nelson transfer her right, title and interest in 16 Dorchester Street to Mark. As we read the agreement, she was required to transfer her right, title and interest in six Wilmington properties, including 18 Dorchester Street, but *not* 16 Dorchester Street. It is unclear to us, therefore, who held title to 16 Dorchester Street as of February 12, 1991.

2. At oral argument, plaintiff's counsel contended that prior to the transfer, the property was in a real estate trust, with Mark and Paula as both trustees and lifetime beneficiaries. Counsel argued that a second real estate trust had been established well in advance of March 1991, and that the "transfer" really amounted to a mere substitution of George Nelson for Mark as trustee. There is no evidence in the record as to whether such trust arrangements ever existed.

Nor is there any evidence that Paula surrendered her interest as either trustee or lifetime beneficiary of 16 Dorchester Street in the marital agreement. *See* n. 1 *supra*.

3. A "skeleton" bankruptcy petition does not include the required itemized lists of assets and liabilities. Petitioners obtain leave to file those lists at a later date. After receiving two such extensions of time in which to file the supporting documents, Mark filed the schedules to accompany his Chapter 13 bankruptcy petition on December 26, 1991. He listed 16 Dorchester Street as real property in which he held an equitable interest of one-half, and on which there were mortgages of $105,214.93 and $68,765.84. Given counsel's argument that Paula had relinquished all interest in the property, *see* n. 1 *supra*, it is unclear who held the remaining one-half beneficial interest in the property.

16 Dorchester Street property.[4] According to defendants, during these proceedings, Judge McGovern of the Probate Court directed the parties to meet with the Chapter 13 trustee in bankruptcy, Joseph Szabo. Defendants assert that trustee Szabo "agreed to execute a stipulation allowing for the sale of the property, asserting that the bankruptcy estate did not claim any right, title or interest in the property, as said property stood in the name of George Nelson, not the Debtor Mark Nelson." Mark does not dispute defendants' version of what transpired.

The Probate Court issued a temporary restraining order on December 9, 1991, with a return date of December 19, 1991. On December 17, 1991, Mark filed another suggestion of bankruptcy and motion to continue. On December 19, 1991, the Probate Court issued an interlocutory order continuing the restraining order in force. The pending sale of 16 Dorchester Street fell through when, according to Mark, Paula refused to provide relief from the liens on the property.

On January 2, 1992, Paula, in a further effort to preserve her rights in 16 Dorchester Street, filed another equitable action seeking an attachment on the property. On January 7, 1992, the Probate Court ordered the attachment.

On January 16, 1992, Mark commenced an adversary proceeding in the bankruptcy court against his ex-wife and her attorneys, claiming that, by pursuing equity actions in state court against property properly in the bankruptcy estate, they had willfully violated an automatic stay provided by 11 U.S.C. § 362. He sought actual damages, costs and attorneys' fees and punitive damages claiming that these arose from defendants' obstruction of the proposed sale of the marital residence. In response, defendants moved to dismiss the action for failure to state a claim.

On February 15, 1992, Mark converted his Chapter 13 bankruptcy petition to a Chapter 7 petition. Subsequently, the mortgagee successfully petitioned the bankruptcy court for relief from the stay in order to permit it to proceed to foreclose on its 16 Dorchester

Street mortgage, an action which ultimately occurred.

On May 22, 1992, the bankruptcy court dismissed Mark's adversary proceeding. He appealed to the district court which, on September 15, 1992, affirmed the judgment of the bankruptcy court. From that decision he now appeals.

## II.

### Discussion

As a general rule, the filing of a bankruptcy petition operates as a stay against actions affecting the property of the bankruptcy estate. 11 U.S.C. § 362(a). Because the stay takes effect upon filing, without the need for further action, it is often referred to as an "automatic" stay. The function of the stay is to "protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had the opportunity to marshal the estate's assets and distribute them equitably among the creditors." *Martin–Trigona v. Champion Fed. Sav. & Loan Assoc.*, 892 F.2d 575, 577 (7th Cir.1989) (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, 6296).

Ordinarily, a party in interest must ask the bankruptcy court for, and receive, relief from the stay before proceeding against the debtor's estate. 11 U.S.C. § 362(d). The code, however, also provides numerous statutory exceptions to the automatic stay. 11 U.S.C. § 362(b). Under 11 U.S.C. § 362(b)(2), actions to "collect[ ] ... alimony, maintenance, or support from property that is *not* property of the estate" are not barred by an automatic stay. 11 U.S.C. § 362(b)(2) (emphasis supplied). Litigants who take action against a bankruptcy estate without receiving the prior approval of the court or falling under one of the statutory exceptions are subject to sanctions. The code provides that "[a]n individual injured by any *willful* violation of a stay provided by

4. She appears to have done so after learning that 16 Dorchester Street was the subject of a purchase and sale agreement.

this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h) (emphasis supplied).

This case turns on two questions: (1) whether Paula's equity actions in state court fell under the § 362(b)(2) exception to the automatic stay; and (2) if not, whether Paula "willfully violated" the automatic stay, thereby subjecting herself to penalties under § 362(h). In this case, the answer to the first question provides the answer to the second.

 As noted above, § 362(b)(2) exempts from automatic stays actions seeking to collect support from property "that is *not* property of the estate." 11 U.S.C. § 362(b)(2) (emphasis supplied). Paula appears to have been aware of the following at the time she filed the November equity action: (1) the Registry of Deeds recorded that ownership of the property had been transferred from Mark to George Nelson; and (2) Mark had not listed any interest in 16 Dorchester Street as property of the estate because he had yet to file the documents to support his bankruptcy petition. At or close to the time she filed the action, Paula learned from Joseph Szabo, the Chapter 13 bankruptcy trustee, that the bankruptcy estate would not claim any of the proceeds of the then pending sale of the property.[5]

Given the peculiar "facts" of this case, we hold that Paula could not have "willfully violated" the automatic stay applicable to plaintiff's property, if, in fact, 16 Dorchester Street was ever covered by such a stay. Although Paula could have asked the bank-

ruptcy court to determine whether the property was subject to a stay prior to commencing her equity actions in state court, we hold that it was reasonable for her to believe that the property was not part of the bankruptcy estate.[6] Indeed, we believe that the record in this case makes it so obvious that Paula's actions could not have been willful that we find this appeal frivolous. See Fed.R.App.P. 38. Therefore, we award the defendants the sum of $2,000 to cover both appellate costs and appellate attorneys' fees said fees to run jointly and severally against appellants and his counsel.[7] *The decision of the district court is affirmed.*

---

5. We also note that Mark's counsel conceded at oral argument that there was no way for Paula to determine from public records who held beneficial interest in the property at 16 Dorchester Street. Indeed, in retrospect, it is impossible for this court to determine whether the property was properly part of the bankruptcy estate. The ambiguous record of this case contains no evidence that the property was ever in a real estate trust, and it is unclear whether, when and how Paula surrendered her interest in the property.

6. Mark does not explicitly state which of Paula's actions interfered with the sale of 16 Dorchester Street. To the extent that he argues for a distinction between actions filed before December 26,

1991, when he filed the schedules accompanying his bankruptcy petition indicating that the bankruptcy estate had an equitable interest in the property, and those initiated thereafter, he does so in a most perfunctory manner. This court has often warned litigants that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

7. Because defendants did not cross-appeal the denial of their motion for costs and fees below, they failed to preserve that issue on appeal.