**In re Joe Pete LOVATO, Debtor.**

**Bankruptcy No. 94–20727.**

United States Bankruptcy Court,
D. Wyoming.

Dec. 13, 1996.

Georg Jensen, Cheyenne, WY, for Movant.

Donald R. Wrobetz, Assistant U.S. Attorney, Cheyenne, WY, for Respondent.

### *ORDER OF CONTEMPT*

PETER J. McNIFF, Bankruptcy Judge.

THIS MATTER came before the court on the motion of the debtor, Joe Pete Lovato, for an order holding the Internal Revenue Service, an agency of the United States of

America (IRS), in contempt for violation of the court's order discharging Mr. Lovato from his prepetition debts. The court held a hearing on the order to show cause on November 26, 1996. The IRS appeared at the hearing.

### Findings of Fact

This chapter 13 case was filed on October 14, 1994. The IRS filed a secured claim of $45,470.10 for unpaid income taxes dating back to 1980. These taxes were dischargeable, non-priority taxes, but they were secured by value in the debtor's property. Mr. Lovato proposed a chapter 13 plan in which he collectively valued the IRS collateral, "debtor's interest in home, thrift saving (sic) plan (TSP), vehicle & gun" at $22,921. The IRS objected to the values set forth by the debtor and objected because the debtor was not surrendering the collateral as an alternative to payment.

The court held a valuation hearing at which it found the IRS claim to be fully secured. The court set the values of the collateral as: Personal Property—$1,000; Retirement Account (Thrift Savings Plan)—$17,588.00; and real property—$109,500.00, subject to any valid prior liens or encumbrances. The debtor's former spouse owned the real property jointly with the debtor, and the residence was encumbered by a mortgage.

When the debtor filed another plan, eliminating the value of his TSP, the IRS objected on that basis. The debtor filed a third amended plan in which he proposed to surrender $17,588 of his TSP and the "value of real estate no less than $26,882.10," and to pay the remaining $1,000 in value over the term of the plan. Thus, the IRS was to be fully secured and the claim was to be mostly satisfied by a surrender of property.

The IRS objected that a partial surrender of the real estate was not acceptable because, in such a circumstance, satisfaction of the lien in the real estate was not realizable, and objected that an actual surrender of possession was not intended by the debtor. The court permitted the partial surrender of the value of the real estate, stated on the record that actual surrender to the IRS was re-

quired, and confirmed the plan. The IRS did not appeal the confirmation order.

Subsequently, the IRS initiated foreclosure proceedings against the debtor's residence. Apparently confused by the effect of the co-owner's interest, the IRS erroneously sold the property for half of the value securing its lien. Mr. Lovato redeemed the residence from the IRS sale. Thus, the IRS realized all of the security from the residence possible under its own sale procedure.

The IRS has not realized the value from the TSP. Although the IRS objected to confirmation because, among other reasons, its lien encumbered all of the TSP, the IRS has been unable to foreclose its interest in the TSP account. This fact was known to the IRS at least by June 1995. Yet, the IRS took no action in the bankruptcy court to somehow remedy what it perceives, in retrospect, as an incorrect valuation.

In October 1995 Mr. Lovato paid the trustee all payments due under his chapter 13 plan. The trustee filed a final account and petition for decree and served a copy on the IRS. On October 18, 1995, the court entered its Order Discharging Debtor After Completion of Chapter 13 Plan. The IRS was served with a copy of the order. At no time while the case was open did the IRS raise the issue of the unrealized lien in the TSP or complain that the discharge should not be entered.

After the plan was confirmed, Mr. Lovato became entitled to income tax refunds for the tax years 1994 and 1995. These refunds were not property of the chapter 13 estate, but rather are post-confirmation property of Mr. Lovato. The refunds total approximately $4,800.

Because Mr. Lovato is a taxpayer with an unsatisfied account, the IRS computer system automatically placed a freeze on all tax refunds to which he is entitled. If the tax liability is paid, the system automatically credits the account and removes the freeze. Even if the tax liability is not paid, the freeze can be manually released.

When Mr. Lovato inquired as to the freeze and requested a release of his refunds, the

IRS representative refused to remedy the problem. This action followed.

### Conclusions of Law

This matter is brought before the court under Fed.R.Bankr.P. 9020(b). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157 and 11 U.S.C. § 524. *In re Skinner*, 917 F.2d 444, 448 (10th Cir.1990).

■ The entry of a discharge in chapter 13 takes place pursuant to 11 U.S.C. § 1328 as soon as the debtor has completed all payments under the plan. Mr. Lovato was discharged of all debts provided for by the plan, which included the dischargeable, personal liability to the IRS. The discharge order operates as an injunction against the continuation of any action to collect the discharged tax debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). However, the discharge does not invalidate or otherwise affect the lien which the IRS has against the Thrift Savings Plan, at least to the extent of the value set forth in the confirmed chapter 13 plan. *In re Wrenn*, 40 F.3d 1162, 1164 (11th Cir.1994).

The IRS does not dispute that the court has the power to find it in contempt and impose sanctions. In the Bankruptcy Reform Act of 1994, Congress amended § 106(a)(1) and specifically waived the federal government's sovereign immunity with respect to § 524. The amendment is effective retroactively.

■ Further, the Tenth Circuit Court of Appeals has held that the bankruptcy court has the authority to enter civil contempt orders under 11 U.S.C. § 105(a). *In re Skinner*, 917 F.2d at 447. This power extends at least to the power under 18 U.S.C. § 401(3) to punish by fine the "disobedience or resistance" to a lawful order of the court, which is delegated by the United States District Court under 28 U.S.C. § 157.

■ The first issue is whether the IRS violated the discharge injunction. In this case, the IRS does not have a lien on the postpetition tax refunds due Mr. Lovato. Nor does IRS have a right of setoff against the refunds. The IRS owes a debt to Mr. Lovato in the amount of the unpaid tax refunds, but Mr. Lovato does not owe a debt to the IRS. Mr. Lovato's personal obligation to the IRS was discharged without objection by the IRS, and there is no mutual obligation to offset. Clearly, the IRS has violated the discharge injunction by attempting to force Mr. Lovato to substitute the refunds for the unreachable TSP collateral.

■ The court can hold the IRS liable for a violation of the discharge injunction if the violation is willful. *In re Hardy*, 97 F.3d 1384, 1387 (11th Cir.1996). In *Hardy*, the Eleventh Circuit held that a violation is willful if the contemnor knew of the court order and intended to take the action which resulted in the disobeyance of the order. *Id.* at 1389.

■ The remaining question is whether the violation was willful. The IRS was served with the trustee's final report and the discharge order, and was aware that Mr. Lovato's personal liability for the taxes was discharged.

The court also concludes that the intent to maintain the freeze on Mr. Lovato's property, irrespective of the discharge, is evident. Despite at least two visits to the IRS office by Mr. Lovato, communications between Mr. Lovato's counsel and the IRS, and the reopening of the bankruptcy case to resolve this issue (over which the parties engaged in vituperative exchanges), the IRS took no affirmative action to remove the freeze imposed by the computer system.

Nevertheless, the IRS argues that the property securing the obligation was not surrendered, that the IRS has not received the value of its interest in the debtor's property and, therefore, the debt was not discharged. The court disagrees.

The IRS mistakes the discharge of the individual's liability with the continuing existence of the IRS lien on the debtor's property. The property from which the IRS is trying to force collection is not the encumbered property. If the lien on the encumbered property is unenforceable, that fact merely goes to the value of the IRS' secured claim.

Furthermore, the taxes in question are not priority taxes. That circumstance makes the IRS argument that it frequently offsets refunds instead of foreclosing its lien in other collateral, completely inapposite.

The IRS has willfully violated the discharge injunction in this case. Mr. Lovato is entitled to compensatory and coercive damages in the amount of the reasonable attorney fees and costs established at the hearing.

It is, therefore, ORDERED that the Internal Revenue Service shall immediately release the 1994 and 1995 income tax refunds which are the unencumbered property of the discharged debtor; and, further

ORDERED that Joe Pete Lovato is entitled to damages from the Internal Revenue Service to compensate him for the fees and costs incurred in enforcing the discharge injunction in the amount of $937.00. The court will enter a simultaneous judgment.