STAHL, Circuit Judge.
 

 In this case, we need to determine whether an employee of the Internal Revenue Service ("IRS") "willfully violate[d]" an order from the bankruptcy court discharging the debts of debtor-taxpayer William C. Murphy, as that term is used in
 
 26 U.S.C. § 7433
 
 (e). After careful consideration, we hold that an employee of the IRS "willfully violates" a discharge order when the employee knows of the discharge order and takes an intentional action that violates the order. Under § 7433(e), the IRS's good faith belief that it has a right to collect the purportedly discharged debts is not relevant to determining whether it "willfully violate[d]" the discharge order. Because the IRS's actions in this case meet this standard, we affirm.
 

 I.
 

 On October 13, 2005, Murphy filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Maine. On Schedule E of his bankruptcy petition, Murphy listed his income tax obligations to the IRS for the years of 1993-1998, 2000, 2001, and 2003, as well as a 2003 tax obligation to the Maine Revenue Services. Murphy's tax obligations were by far the largest liabilities he sought to discharge. In his petition, Murphy listed total liabilities of $601,861.61, of which $546,161.61 were tax obligations. On January 20, 2006, Assistant U.S. Attorney Frederick Emery, Jr. ("AUSA Emery") filed an appearance on behalf of the IRS in the bankruptcy proceeding.
 

 On February 14, 2006, the bankruptcy court granted Murphy a discharge. The discharge order, which appears to be a standard form, reads:
 

 It appearing that the debtor is entitled to a discharge,
 

 IT IS ORDERED:
 

 The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).
 

 Beneath the bankruptcy judge's signature, there is a notice that states, in bold and capital letters, "
 
 SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.
 
 " The back of the order provides an explanation of bankruptcy discharge in a Chapter 7 case, stating that "[t]he discharge prohibits any attempt to collect from the debtor a debt that has been discharged." The order lists "[s]ome of the common types of debts which are
 
 not
 
 discharged" and specifically notes that "[d]ebts for most taxes" are not discharged.
 

 It does not appear that the IRS objected to Murphy's discharge prior to the bankruptcy court entering its discharge order. On February 16, 2006, the IRS received notice of the discharge order.
 

 The IRS did not believe that the discharge relieved Murphy of his tax obligations. Rather, the IRS viewed Murphy's taxes as excepted from discharge under
 
 11 U.S.C. § 523
 
 (a)(1)(C), which excepts from discharge any tax if "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." Based on its earlier investigations into Murphy, the IRS believed that Murphy had willfully attempted to evade taxes during all of the years in question.
 

 From February 2006 to February 2009, the IRS repeatedly informed Murphy that it did not view his tax obligations as discharged and that it planned to collect what it believed was owed. On February 20, 2009, the IRS issued levies against several insurance companies with which Murphy then did business in an attempt to collect on these tax obligations. Margurite Gagne, a revenue officer for the IRS, signed the levy notices sent to the insurance companies.
 

 On August 14, 2009, Murphy filed an adversarial proceeding seeking a declaration that his tax obligations from 1993-1998, 2000, and 2001 had been discharged. In this proceeding, AUSA Emery represented the IRS. According to the IRS, AUSA Emery "took only minimal discovery in the case" and failed to submit evidence to the bankruptcy court that the IRS had developed during its investigation into Murphy's tax obligations. Instead, the IRS claims that AUSA Emery merely filed a summary of the IRS's allegations of Murphy's tax evasion, without submitting any admissible evidence to support the allegations.
 

 On June 22, 2010, the bankruptcy court granted summary judgment in Murphy's favor and declared that Murphy's tax obligations had been discharged. The bankruptcy court later noted that it granted summary judgment in large part because the IRS's opposition to summary judgment "fell far short of applicable substantive and procedural standards."
 
 Murphy
 
 v.
 
 IRS
 
 (
 
 In re Murphy
 
 ), No. 05-22363,
 
 2013 WL 6799251
 
 , at *2 (Bankr. D. Me. Dec. 20, 2013). The IRS did not appeal the bankruptcy court's 2010 summary judgment ruling.
 

 Subsequently, AUSA Emery was diagnosed with frontotemporal dementia ("FTD"). According to the IRS, symptoms of FTD include "impairment of executive function, such as the cognitive skill of planning and organizing." Based on AUSA Emery's medical records and the opinions of three physicians, the IRS believes that AUSA Emery was already experiencing the symptoms of FTD in 2010.
 

 In February 2011, Murphy filed a complaint against the IRS under § 7433(e), alleging that an employee of the IRS willfully violated the bankruptcy court's 2006 discharge order in February 2009 by issuing levies against the insurance companies with which he did business and thereby attempting to collect on his discharged tax obligations.
 
 [1]
 
 The IRS responded that it did not willfully violate the order because it reasonably believed his tax obligations were excepted from discharge under § 523(a)(1)(C) based on its investigation into his alleged tax evasion.
 

 On December 20, 2013, the bankruptcy court granted summary judgment for Murphy for his § 7433(e) claim. The court found that the term "willfully violates" has an established meaning in the context of violations of automatic stays and discharge orders issued in bankruptcy proceedings: a willful violation occurs "when, with knowledge of the discharge, [a creditor] intends to take an action, and that action is determined to be an attempt to collect a discharged debt."
 
 In re Murphy
 
 ,
 
 2013 WL 6799251
 
 , at *7. The court further found that the 2010 summary judgment ruling collaterally estopped the IRS from relitigating whether Murphy's tax obligations were discharged, whether the IRS knew they were discharged, and whether it took actions which violated the discharge order.
 
 Id.
 
 at *8.
 

 After the bankruptcy court denied the IRS's motion for reconsideration, the IRS appealed to the district court, which vacated the bankruptcy court's decision.
 
 IRS
 
 v.
 
 Murphy
 
 ,
 
 564 B.R. 96
 
 , 98 (D. Me. 2016). The district court concluded that the bankruptcy court should have considered AUSA Emery's impairment before finding that the 2010 summary judgment ruling collaterally estopped the IRS from relitigating
 issues related to Murphy's discharge.
 

 Id.
 

 at 112
 
 .
 

 However, the district court agreed with the bankruptcy court's definition of "willfully violates" as used in § 7433(e).
 

 Id.
 

 at 106
 
 . The district court found that, by 1998, the term had an established meaning in the context of violations of both automatic stays and discharge injunctions, and under this established meaning, a creditor's "good faith belief in a right to the property is not relevant to a determination of whether the violation was willful."
 

 Id.
 

 (quoting
 
 Fleet Morg. Grp., Inc.
 
 v.
 
 Kaneb
 
 ,
 
 196 F.3d 265
 
 , 269 (1st Cir. 1999) ).
 

 On remand, the parties entered into a settlement agreement, whereby the IRS waived its collateral estoppel arguments and accepted that the 2010 summary judgment ruling conclusively determined that Murphy's tax obligations had been discharged. The IRS reserved the right:
 

 for further appeal(s) only its arguments that that [sic] a debtor is not entitled to damages where a creditor's violation of the discharge reflects a reasonable belief that the debt involved was excepted from discharge, and/or that the "willfully violates" language in IRS § 7433(e) should be construed to permit the IRS to defend against liability for violating the discharge on the basis that its employee reasonably believed that the tax involved is excepted from discharge [hereinafter "the willfully violates issue"].
 

 As part of the settlement, the IRS agreed to pay $175,000 as Murphy's damages once it had exhausted the reserved right to appeal if the appeal was lost. The settlement did not "resolve whether or not the deficiencies in in [sic] the United States' response to plaintiff's motion for summary judgment ... were caused by any mental disability of the former Assistant United States Attorney at the time of the summary judgment proceedings." Based on this agreement, on January 4, 2017, the bankruptcy court entered final judgment against the United States, and the district court affirmed the judgment on appeal. The IRS timely appeals to this court.
 
 [2]
 

 II.
 

 We are, at this stage, confronted solely with the bankruptcy court's resolution of a legal question, which we review de novo.
 
 Wilding
 
 v.
 
 CitiFinancial Consumer Fin. Servs., Inc.
 
 , (
 
 In re Wilding
 
 ),
 
 475 F.3d 428
 
 , 430 (1st Cir. 2007). The parties' settlement agreement reserved for the IRS the right to appeal only the bankruptcy court's construction of the phrase "willfully violates" as used in § 7433(e).
 

 The IRS argues it does not "willfully violate" an automatic stay or discharge order if it has a good faith belief that its actions do not violate the bankruptcy court's order. In support of its position, the IRS presents two somewhat conflicting arguments. First, it claims that, before Congress enacted § 7433(e) in 1998, all creditors could raise a good faith defense to allegations that they willfully violated an automatic stay or discharge order. Second, it posits that even if most creditors could not raise a good faith defense, such a defense must be available to the IRS because § 7433(e) is a waiver of sovereign immunity that must be construed narrowly.
 

 We begin our interpretation of § 7433(e)"where all such inquiries must begin: with the language of the statute itself."
 
 Ransom
 
 v.
 
 FIA Card Servs., N.A.
 
 ,
 
 562 U.S. 61
 
 , 69,
 
 131 S.Ct. 716
 
 ,
 
 178 L.Ed.2d 603
 
 (2011) (quoting
 
 United States
 
 v.
 
 Ron Pair Enters., Inc.
 
 ,
 
 489 U.S. 235
 
 , 241,
 
 109 S.Ct. 1026
 
 ,
 
 103 L.Ed.2d 290
 
 (1989) ). Section 7433(e) provides that:
 

 If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service
 
 willfully violates
 
 any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title 11, United States Code (or any successor provision), ... such taxpayer may petition the bankruptcy court to recover damages against the United States. (emphasis added).
 

 Congress did not define "willfully" or the phrase "willfully violates" as used in § 7433(e). "[W]e attribute to words that are not defined in the statute itself their ordinary usage, while keeping in mind that meaning can only be ascribed to statutory language if that language is taken in context."
 
 Brady
 
 v.
 
 Credit Recovery Co., Inc.
 
 ,
 
 160 F.3d 64
 
 , 66 (1st Cir. 1998).
 

 "The statutory term 'willfully' is a chameleon."
 
 United States
 
 v.
 
 Marshall
 
 ,
 
 753 F.3d 341
 
 , 345 (1st Cir. 2014). At a minimum, "willfully" "differentiates between deliberate and unwitting conduct."
 
 Bryan
 
 v.
 
 United States
 
 ,
 
 524 U.S. 184
 
 , 191,
 
 118 S.Ct. 1939
 
 ,
 
 141 L.Ed.2d 197
 
 (1998) ;
 
 see also
 

 McLaughlin
 
 v.
 
 Richland Shoe Co.
 
 ,
 
 486 U.S. 128
 
 , 133,
 
 108 S.Ct. 1677
 
 ,
 
 100 L.Ed.2d 115
 
 (1988) ("In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.' "). In criminal law, it "typically refers to a culpable state of mind," such that a "willful violation" occurs only when a defendant "act[s] with knowledge that his conduct [is] unlawful."
 
 Bryan
 
 ,
 
 524 U.S. at 191-92
 
 ,
 
 118 S.Ct. 1939
 
 . In contrast, "[c]ivil use of the term ... typically presents neither the textual nor the substantive reasons for pegging the threshold of liability at knowledge of wrongdoing."
 
 Safeco Ins. Co. of Am.
 
 v.
 
 Burr
 
 ,
 
 551 U.S. 47
 
 , 57 n.9,
 
 127 S.Ct. 2201
 
 ,
 
 167 L.Ed.2d 1045
 
 (2007).
 

 In sum, as the Supreme Court has repeatedly stated, " 'willfully' is a 'word of many meanings whose construction is often dependent on the context in which it appears.' "
 

 Id.
 

 at 57
 
 ,
 
 127 S.Ct. 2201
 
 (quoting
 
 Bryan
 
 ,
 
 524 U.S. at 191
 
 ,
 
 118 S.Ct. 1939
 
 );
 
 see also
 

 Ratzlaf
 
 v.
 
 United States
 
 ,
 
 510 U.S. 135
 
 , 141,
 
 114 S.Ct. 655
 
 ,
 
 126 L.Ed.2d 615
 
 (1994) ;
 
 United States
 
 v.
 
 Murdock
 
 ,
 
 290 U.S. 389
 
 , 394-95,
 
 54 S.Ct. 223
 
 ,
 
 78 L.Ed. 381
 
 (1933). We look then to the context in which the word "willfully" appears in § 7433(e) to ascertain its meaning.
 

 Section 7433(e) directly links the phrase "willfully violates" to two pre-existing sections of the Bankruptcy Code: section 362, which addresses automatic stays, and section 524, which addresses discharges and discharge orders. "We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts."
 
 Goodyear Atomic Corp.
 
 v.
 
 Miller
 
 ,
 
 486 U.S. 174
 
 , 184-85,
 
 108 S.Ct. 1704
 
 ,
 
 100 L.Ed.2d 158
 
 (1988). This presumption is particularly appropriate when the new legislation invokes and builds off an existing statutory framework.
 
 See, e.g.
 
 ,
 
 Trans World Airlines, Inc.
 
 v.
 
 Thurston
 
 ,
 
 469 U.S. 111
 
 , 126,
 
 105 S.Ct. 613
 
 ,
 
 83 L.Ed.2d 523
 
 (1985). We turn then to examine how courts had interpreted sections 362 and 524 of the Bankruptcy Code in the years before Congress enacted § 7433(e), looking first at violations of automatic stays and then turning to violations of discharge orders.
 

 III.
 

 A.
 

 The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws."
 
 Midlantic Nat. Bank v. N.J. Dept. of Envtl. Prot.
 
 ,
 
 474 U.S. 494
 
 , 503,
 
 106 S.Ct. 755
 
 ,
 
 88 L.Ed.2d 859
 
 (1986) (quoting S. Rep. No 95-989, p. 54 (1978); H.R. Rep No. 95-595, p. 340 (1977) ). "The stay gives a 'breathing spell' to the debtor and stops 'all collection efforts, all harassment, and all foreclosure actions.' "
 
 Tringali
 
 v.
 
 Hathaway Mach. Co., Inc.
 
 ,
 
 796 F.2d 553
 
 , 562 (1st Cir. 1986) (quoting H.R. Rep. No. 95-595, p. 340 ).
 

 Congress enacted then-section 362(h) of the Bankruptcy Code in 1984 to provide a private cause of action to "[a]n individual injured by any willful violation of a stay...."
 
 11 U.S.C. § 362
 
 (h) (West 1998);
 
 see
 

 Vahlsing
 
 v.
 
 Comm. Union Ins. Co., Inc.
 
 ,
 
 928 F.2d 486
 
 , 489 n.1 (1st Cir. 1991).
 
 [3]
 
 Before this provision was added to the Bankruptcy Code, some courts had imposed sanctions for willful violations of automatic stays "pursuant to the authority of bankruptcy courts to order parties in contempt."
 
 Crysen/Montenay Energy Co.
 
 v.
 
 Esselen Assocs., Inc.
 
 (
 
 In re Crysen/Montenay Energy Co.
 
 ),
 
 902 F.2d 1098
 
 , 1104 (2d Cir. 1990). For this reason, the standard courts had used for evaluating whether a violation was willful was the standard that "governed contempt proceedings: a party generally would not have sanctions imposed ... as long as it had acted without maliciousness and had had a good faith argument and belief that its actions did not violate the stay."
 

 Id.
 

 However, because § 362(h) created "an independent statutory basis" to hold violators of the automatic stay liable, courts began to apply "a standard less stringent than maliciousness or bad faith to govern the imposition of sanctions in bankruptcy cases."
 

 Id.
 

 Prior to the enactment of § 7433(e), nearly all courts, and a majority of the circuits, had held that a willful violation of an automatic stay under § 362(h) occurs when an individual knows of the automatic stay and takes an intentional action that violates the automatic stay.
 
 See, e.g.
 
 ,
 
 Jove Eng'g, Inc.
 
 v.
 
 IRS
 
 (
 
 In re Jove Eng'g, Inc.
 
 ),
 
 92 F.3d 1539
 
 , 1555 (11th Cir. 1996) ;
 
 Price
 
 v.
 
 United States
 
 (
 
 In re Price
 
 ),
 
 42 F.3d 1068
 
 , 1071 (7th Cir. 1994) ;
 
 In re Crysen/Montenay Energy Co.
 
 ,
 
 902 F.2d at
 
 1105 ;
 
 Cuffee
 
 v.
 
 Atl. Bus. & Cmty. Corp.
 
 (
 
 In re Atl. Bus. & Cmty. Corp.
 
 ),
 
 901 F.2d 325
 
 , 329 (3d Cir. 1990) ;
 
 Knaus
 
 v.
 
 Concordia Lumber Co.
 
 (
 
 In re Knaus
 
 ),
 
 889 F.2d 773
 
 , 775 (8th Cir. 1989) ;
 
 Goichman
 
 v.
 
 Bloom
 
 (
 
 In re Bloom
 
 ),
 
 875 F.2d 224
 
 , 227 (9th Cir. 1989) ;
 
 Budget Serv. Co.
 
 v.
 
 Better Homes of Virginia
 
 ,
 
 804 F.2d 289
 
 , 292-93 (4th Cir. 1986). These courts refused to incorporate a bad faith or maliciousness requirement, and in fact many specifically rejected good faith defenses.
 
 In re Crysen/Montenay Energy Co.
 
 ,
 
 902 F.2d at
 
 1104-05 ;
 
 In re Atl. Bus. & Cmty. Corp.
 
 ,
 
 901 F.2d at
 
 329 ;
 
 see also
 

 Pinkstaff
 
 v.
 
 United States
 
 (
 
 In re Pinkstaff
 
 ),
 
 974 F.2d 113
 
 , 115 (9th Cir. 1992) ("As it is undisputed that the IRS acted with knowledge of the bankruptcy filing, it necessarily follows that the government willfully violated the automatic stay." (internal quotation marks and citations omitted) ).
 

 Contemporary versions of leading bankruptcy treatises defined a "willful violation" of the automatic stay in the same manner.
 
 See
 
 George M. Treister et al.,
 
 Fundamentals of Bankruptcy Law
 
 (4th ed. 1996) § 5.01(c) ("A willful violation of the stay ... does not require an intent to violate nor an awareness that the conduct was prohibited by the stay. It suffices that
 the violator knew of the existence of the stay,
 
 i.e.
 
 , that he knew of the pendency of the bankruptcy, and that he intentionally did the violating act."); David G. Epstein et al.,
 
 Bankruptcy
 
 (1992) § 3-33(c) ("A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay."). These contemporary sources further show that the phrase "willful violation" had a generally accepted meaning at the time Congress enacted § 7433(e).
 
 See
 

 Hamilton
 
 v.
 
 Lanning
 
 ,
 
 560 U.S. 505
 
 , 515-16,
 
 130 S.Ct. 2464
 
 ,
 
 177 L.Ed.2d 23
 
 (2010) (considering circuit court decisions and contemporary bankruptcy treatises when interpreting undefined term in the Bankruptcy Code).
 

 The IRS claims that before 1998, a few circuits, including this circuit, had adopted a "less stringent standard" that allowed alleged violators to raise a good faith defense. We disagree. The three circuit court decisions cited by the IRS do not provide an alternative definition of the phrase "willful violation."
 
 Nelson
 
 v.
 
 Taglienti
 
 (
 
 In re Nelson
 
 ),
 
 994 F.2d 42
 
 , 45 (1st Cir. 1993) ;
 
 Andrews Univ.
 
 v.
 
 Merchant
 
 (
 
 In re Merchant
 
 ),
 
 958 F.2d 738
 
 , 742 (6th Cir. 1992) ;
 
 Matter of Sherk
 
 (
 
 In re Sherk
 
 ),
 
 918 F.2d 1170
 
 , 1178 (5th Cir. 1990)
 
 abrogated on other grounds by
 

 Taylor
 
 v.
 
 Freeland & Kronz
 
 ,
 
 503 U.S. 638
 
 , 643,
 
 112 S.Ct. 1644
 
 ,
 
 118 L.Ed.2d 280
 
 (1992). Rather, these three decisions all appear to be limited resolutions of idiosyncratic fact patterns, with two arising in the context of domestic relations,
 
 see
 

 In re Nelson
 

 994 F.2d at
 
 45 ;
 
 In re Sherk
 
 ,
 
 918 F.2d at 1178
 
 , without a broader analysis of the meaning of "willful violation." Indeed, in
 
 In re Nelson
 
 , we avoided adopting a particular definition of "willful violation" by specifically limiting our holding to "the peculiar 'facts' of th[e] case."
 
 994 F.2d at 45
 
 .
 
 [4]
 

 A review of cases from within these circuits demonstrates that these three decisions did not announce an alternative "less stringent standard" for violations of automatic stays. Even after these decisions were issued, courts continued to apply the generally accepted definition of "willful violation" and rejected good faith defenses.
 
 See, e.g.
 
 ,
 
 Stmima Corp.
 
 v.
 
 Carrigg
 
 (
 
 In re Carrigg
 
 ),
 
 216 B.R. 303
 
 , 305 (B.A.P. 1st Cir. 1998) ;
 
 Shadduck
 
 v.
 
 Rodolakis
 
 ,
 
 221 B.R. 573
 
 , 577, 582-83 (D. Mass. 1998) (finding willful violation of automatic stay by IRS despite its argument that it acted in good faith);
 
 In re Walker
 
 ,
 
 168 B.R. 114
 
 , 121 (E.D. La. 1994) ("Willfulness is not measured by specific intent to violate a court order....");
 
 In re Timbs
 
 ,
 
 178 B.R. 989
 
 , 997 (Bankr. E.D. Tenn. 1994) ("[A] good faith mistake of the law, a legitimate dispute as to legal rights or even good faith reliance on an attorney's advice do[es] not relieve a willful violator from the consequences of his act.");
 
 Smith
 
 v.
 
 GTE N. Inc.
 
 (
 
 In re Smith
 
 ),
 
 170 B.R. 111
 
 , 115, 117 (Bankr. N.D. Ohio 1994) (no good faith defense to willful violation of automatic stay).
 

 The IRS also points to the Third Circuit's decision in
 
 University Medical Center
 
 v.
 
 Sullivan
 
 (
 
 In re University Medical Center
 
 ),
 
 973 F.2d 1065
 
 (3d Cir. 1992) as an example of a court adopting a good faith defense for willful violations of automatic stays. It is true that, if read broadly,
 

 In re University Medical Center
 
 could allow a creditor to raise a good faith defense in any situation where existing law leads a creditor to reasonably believe "its actions to be in accord with the stay."
 

 Id.
 

 at 1088
 
 .
 
 [5]
 
 However, pre-1998 decisions from within the Third Circuit demonstrate that courts did not read
 
 In re University Medical Center
 
 so broadly. In a decision issued only eight months after
 
 In re University Medical Center
 
 , the Third Circuit itself reaffirmed that "[w]illfulness does not require that the creditor intend to violate the automatic stay provision" and that "a creditor's 'good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness under § 362(h)."
 
 Lansdale Family Rests., Inc.
 
 v.
 
 Weis Food Serv.
 
 (
 
 In re Lansdale Family Rests., Inc.
 
 ),
 
 977 F.2d 826
 
 , 829 (3d Cir. 1992) (citing
 
 In re Univ. Med. Ctr.
 
 ,
 
 973 F.2d at
 
 1087-88 ). And, in a case involving a taxpayer's suit against the IRS, the Bankruptcy Court for the Middle District of Pennsylvania rejected the IRS's argument that it relied in good faith on existing procedure set out in the IRS manual, concluding that "[e]ven a good faith belief that a party is not violating a stay is insufficient to escape liability."
 
 Weisberger
 
 v.
 
 United States
 
 (
 
 In re Weisberger
 
 ),
 
 205 B.R. 727
 
 , 731 (Bankr. M.D. Pa. 1997) (citing
 
 In re Univ. Med. Ctr.
 
 ,
 
 973 F.2d at
 
 1088 ).
 

 In sum, we find the phrase "willful violation" had an established meaning in the context of violations of automatic stays as of 1998: a creditor willfully violated the automatic stay if it knew of the automatic stay and took an intentional action that violated the automatic stay. A good faith belief in a right to the property was not relevant to determining whether the creditor's violation was willful.
 

 B.
 

 A discharge order issued pursuant to § 524(a) generally "relieves a debtor from all pre-petition debt" and "permanently enjoins creditor actions to collect discharged debts."
 
 Bessette
 
 v.
 
 Avco Fin. Servs., Inc.
 
 ,
 
 230 F.3d 439
 
 , 444 (1st Cir. 2000). In this way, the discharge order is designed "to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts."
 
 Pratt
 
 v.
 
 Gen. Motors Acceptance Corp.
 
 (
 
 In re Pratt
 
 ),
 
 462 F.3d 14
 
 , 19 (1st Cir. 2006) ;
 
 see also
 

 Hardy
 
 v.
 
 United States
 
 (
 
 In re Hardy
 
 ),
 
 97 F.3d 1384
 
 , 1388-89 (11th Cir. 1996) (discussing how § 524"embodies the 'fresh start' concept of the bankruptcy code").
 

 By 1998, bankruptcy courts had relied on their equitable powers, granted by § 105(a), to sanction parties that willfully violated discharge orders,
 
 see
 

 Bessette
 
 ,
 
 230 F.3d at
 
 445 (citing
 
 In re Hardy
 
 ,
 
 97 F.3d at
 
 1389 ;
 
 In re Elias
 
 ,
 
 98 B.R. 332
 
 , 337 (N.D. Ill. 1989) ;
 
 Matthews
 
 v.
 
 United States
 
 (
 
 In re Matthews
 
 ),
 
 184 B.R. 594
 
 , 598 (Bankr. S.D. Ala. 1995) ), and had begun to apply the same generally accepted definition of "willful violation" used for violations of automatic stays to violations of discharge orders. In
 
 In re Hardy
 
 , the Eleventh Circuit used the same willfulness definition when determining whether the IRS violated a debtor's discharge order.
 
 97 F.3d at 1390
 
 . Other bankruptcy courts from outside the Eleventh Circuit followed its lead.
 
 See
 

 In re Hill
 
 ,
 
 222 B.R. 119
 
 , 122-23 (Bankr. N.D. Oh. 1998) ;
 
 In re Lovato
 
 ,
 
 203 B.R. 747
 
 , 749 (Bankr. D. Wyo. 1996) ;
 
 see also
 

 Behrens
 
 v.
 
 Woodhaven Ass'n
 
 ,
 
 87 B.R. 971
 
 , 976 (Bankr. N.D. Ill. 1988),
 
 aff'd
 
 , No.
 
 83 B 4896
 
 ,
 
 1989 WL 47409
 
 (N.D. Ill. Mar. 8, 1989) (finding willful violation of discharge order in case before
 
 In re Hardy
 
 when creditor sued debtor on a prepetition contract "with full knowledge of the Debtors' Chapter 7 case and discharge").
 

 As Murphy concedes, fewer courts had addressed the standard for willful violations of discharge orders by 1998 than those that had discussed the meaning in the context of automatic stays and § 362(h). However, we find that when Congress enacted § 7433(e), it sought to apply the same generally accepted standard to violations of both automatic stays and discharge orders.
 

 First, the plain language of § 7433(e) does not distinguish between the two orders. The object of the verb/adverb combination "willfully violates" in § 7433(e) is "any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge)...." Based on this structure, it would seem odd to imbue "willfully violates" with two different meanings, one for automatic stays and one for discharge orders.
 

 Second, preexisting provisions of the Tax Code already allowed the IRS to raise its good faith belief, not as a defense to liability, but as a means of mitigating damages. Under
 
 26 U.S.C. § 7430
 
 , a taxpayer who "prevails" in an action against the IRS may recover reasonable attorney's fees. However, there is an exception to this rule: a taxpayer will not be treated as the prevailing party "if the United States establishes that the position of the [IRS] in the proceeding was substantially justified."
 
 26 U.S.C. § 7430
 
 (c)(4)(B).
 

 Section 7430(c)(4)(B) was already in place in 1998,
 
 see
 

 26 U.S.C. § 7430
 
 (c)(4)(B) (West 1998), and similar protections had been in place since 1982,
 
 see
 

 26 U.S.C. § 7430
 
 (c)(2)(A) (West 1982) (party not a prevailing party against the United States unless it "establishes that the position of the United States in the civil proceeding was unreasonable");
 
 Kaufman
 
 v.
 
 Egger
 
 ,
 
 758 F.2d 1
 
 , 3-4 (1st Cir. 1985). As the bankruptcy court recognized below, § 7430(c)(4)(B)"acknowledges that
 
 liability
 
 under the Code may flow from good faith actions of the IRS, but that 'substantial justification' may
 
 mitigate
 
 the damages available to the aggrieved party."
 
 In re Murphy
 
 ,
 
 2013 WL 6799251
 
 , at *9 (emphasis added);
 
 see also
 

 Kovacs
 
 v.
 
 United States
 
 ,
 
 739 F.3d 1020
 
 , 1026 (7th Cir. 2014) (discussing interplay between § 7430 and § 7433(e) ). While the IRS cannot rely on its good faith belief that it could collect from Murphy as a defense to liability, it can invoke its good faith belief to limit Murphy's recovery to his actual damages.
 
 [6]
 

 For the foregoing reasons, we find that "willful violation" had an established meaning in 1998 and that Congress used that established meaning in § 7433(e) to set the standard for evaluating violations of both automatic stays and discharge orders.
 

 IV.
 

 Although we rely primarily on Congress's contemporary understanding of the phrase "willful violation" in construing § 7433(e), post-1998 decisions from this circuit and administrative materials from the IRS confirm that the generally accepted definition of willful violation should control.
 

 Since 1998, this circuit has adopted the same definition of "willful violation" for violations of both automatic stays and discharge orders. In
 
 Fleet Mortgage Group, Inc.
 
 v.
 
 Kaneb
 
 , issued only one year after § 7433(e) was enacted, we explicitly adopted the generally accepted definition for violations of automatic stays.
 
 196 F.3d at 268-69
 
 . Subsequently, in
 
 In re Pratt
 
 , we used the same standard to evaluate whether a violation of a discharge order was willful.
 
 462 F.3d at 21
 
 . We stressed that
 
 Kaneb
 
 had "rejected the proposition that a stay violation could not be actionable (
 
 viz.
 
 , 'willful') if the creditor had made a good faith mistake."
 

 Id.
 

 We then held that the creditor in
 
 Pratt
 
 willfully violated the discharge order because the creditor:
 

 ha[d] not suggested-nor could it plausibly do so on these record facts-that it did not know of the existence of the [debtors'] chapter 7 discharge, or that it did not intend to communicate to the [debtors] its refusal to release its lien in the automobile so that it could be junked.
 

 Id.
 

 In addition, the current version of the Internal Revenue Manual appears to adopt the same generally accepted definition for violations of automatic stays and discharge orders. The Manual defines "willful" as "an act that was committed intentionally or knowingly" and states that "[a] willful violation occurs when the Service has received notice of a voluntary bankruptcy filing or of the court's granting of a discharge, and the Service does not respond timely to stop its collection activities." I.R.M. 1.4.51.2.7.1 (Aug. 11, 2015). Although the Manual does not have the force and effect of law, we may rely on it to the extent we find it persuasive.
 
 See
 

 Heinz
 
 v.
 
 Cent. Laborers' Pension Fund
 
 ,
 
 303 F.3d 802
 
 , 812 n.17 (7th Cir. 2002) (citing
 
 United States
 
 v.
 
 Mead Corp.
 
 ,
 
 533 U.S. 218
 
 ,
 
 121 S.Ct. 2164
 
 ,
 
 150 L.Ed.2d 292
 
 (2001) ).
 

 V.
 

 We turn then to the IRS's alternative argument: that even if there was a generally accepted definition of "willful violation," such a definition is too broad to be applied against the United States because § 7433(e) is a waiver of sovereign immunity and such waivers must be narrowly construed.
 

 It is true that courts "construe any ambiguities in the scope of a waiver in favor of the sovereign."
 
 FAA
 
 v.
 
 Cooper
 
 ,
 
 566 U.S. 284
 
 , 291,
 
 132 S.Ct. 1441
 
 ,
 
 182 L.Ed.2d 497
 
 (2012). At the same time, "the sovereign immunity canon 'is a tool for interpreting the law' and ... it does not 'displac[e] the other traditional tools of statutory construction.' "
 

 Id.
 

 (quoting
 
 Richlin Sec. Serv. Co.
 
 v.
 
 Chertoff
 
 ,
 
 553 U.S. 571
 
 , 589,
 
 128 S.Ct. 2007
 
 ,
 
 170 L.Ed.2d 960
 
 (2008) ). We thus must "be careful not to be more stinting in the interpretation of the provision than its language requires," for "just as the courts should not construe a waiver of sovereign immunity more broadly than Congress intended, '[n]either, however, should we assume the authority to narrow the waiver that Congress intended.' "
 
 Rakes
 
 v.
 
 United States
 
 ,
 
 442 F.3d 7
 
 , 19 n. 6 (1st Cir. 2006) (quoting
 
 United States
 
 v.
 
 Kubrick
 
 ,
 
 444 U.S. 111
 
 , 118,
 
 100 S.Ct. 352
 
 ,
 
 62 L.Ed.2d 259
 
 (1979) ).
 

 As discussed above, traditional interpretive tools lead us to conclude that the generally accepted definition of "willful violation" should apply to § 7433(e). By 1998, "willful violation" had an established meaning in the context of violations of automatic stays, and this established meaning had been applied to violations of discharge orders. And, by 1998, the Tax Code already allowed the IRS to raise its
 good faith belief, not as a defense to liability, but as a means of limiting the taxpayer's recovery to the actual damages incurred. Moreover, several of the decisions adopting the generally accepted definition of "willful violation" before 1998 applied that definition against the government, despite the government's invocation of sovereign immunity.
 
 See
 

 In re Hardy
 
 ,
 
 97 F.3d at
 
 1390 ;
 
 In re Jove Eng'g, Inc.
 
 ,
 
 92 F.3d at
 
 1555-56 ;
 
 In re Price
 
 ,
 
 42 F.3d at
 
 1071 ;
 
 In re Pinkstaff
 
 ,
 
 974 F.2d at 115
 
 .
 

 When considering the scope of a waiver of sovereign immunity, a "narrower temporal approach-looking at congressional understanding of the enumerated sections at the time of the [enactment]-is preferable," in part because "the approach adheres to the general principle that Congress is presumed to know the content of background law."
 
 United States
 
 v.
 
 Torres
 
 (
 
 In re Rivera Torres
 
 ),
 
 432 F.3d 20
 
 , 25 (1st Cir. 2005). By directly linking the phrase "willfully violates" in § 7433(e) to sections 362 and 524, Congress sought to use the generally accepted definition of the phrase "willful violation" in this context as the limit to its waiver of sovereign immunity. And, when we look past 1998, our subsequent caselaw and the administrative materials from the IRS itself both confirm that the generally accepted standard should control. For these reasons, we do not believe sovereign immunity requires us to adopt a more narrow definition of "willfully violates."
 

 The IRS claims that if we apply the generally accepted definition of "willful violation" to § 7433(e), we are effectively forcing it to "seek a pre-enforcement determination from the bankruptcy court about whether a tax debt has been discharged prior to initiating any post-discharge collection efforts," which would be both impractical and inconsistent with other provisions of the Bankruptcy Code.
 

 We agree that "the IRS need not appear and object in the bankruptcy court to be excepted from [a] discharge under § 523(a)(1)(C)."
 
 Console
 
 v.
 
 Comm'r
 
 ,
 
 291 Fed.Appx. 234
 
 , 237 (11th Cir. 2008). Nothing in our decision today forces the IRS to obtain a pre-enforcement determination before seeking to collect on tax obligations like Murphy's. The IRS remains free to "wait until the bankruptcy discharge is invoked as a defense to its collection efforts, and then prove a factual basis for the tax fraud exception in the collection proceedings."
 

 Id.
 

 But, to the extent we find policy considerations relevant, we believe compelling policy justifications, embodied in § 7433(e), weigh against allowing the IRS to attempt to collect purportedly discharged debts without facing potential consequences. Discharge orders "ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts."
 
 In re Pratt
 
 ,
 
 462 F.3d at 19
 
 . Congress enacted § 7433(e) to protect taxpayers who invoked the bankruptcy process, providing them with a means of recovering damages if an employee of the IRS willfully violates either the automatic stay or the discharge order, the two foundational orders of the bankruptcy process.
 

 If the IRS found the February 14, 2006 discharge order ambiguous, there was a variety of processes available to it to determine whether Murphy's tax obligations had been discharged. First, although not obligated to, the IRS could have forestalled any possible question about dischargeability by filing an objection in the bankruptcy court after it received notice of Murphy's petition but before Murphy received his discharge.
 
 See
 

 Console
 
 ,
 
 291 Fed.Appx. at
 
 237 ;
 
 see also
 

 Korte
 
 v.
 
 United States
 
 (
 
 In re Korte
 
 ),
 
 262 B.R. 464
 
 , 471 (B.A.P. 8th Cir. 2001). Second, the IRS could have filed an adversary proceeding
 before it began its collection efforts to obtain a determination of whether the tax obligations were covered by the discharge order.
 
 See
 

 Hassell
 
 v.
 
 Comm'r
 
 ,
 
 92 T.C.M. (CCH) 273
 
 ,
 
 2006 WL 2602032
 
 , at *3 (2006) ;
 
 United States
 
 v.
 
 Acker
 
 (
 
 In re Acker
 
 ), No. 09-41961,
 
 2010 WL 3547221
 
 , at *1 (Bankr. E.D. Tex. Sept. 7, 2010).
 

 Alternatively, the IRS could, as it did, attempt to collect from Murphy and thereby force him to return to the bankruptcy court to obtain a determination that the debts had been discharged. And, of course, if AUSA Emery had adequately supported the opposition for summary judgment on dischargeability with admissible evidence back in 2010, the bankruptcy court may well have ruled in the IRS's favor and brought this case to an end years ago, with the IRS facing no penalty for its collection efforts.
 

 Because of the parties' settlement agreement, the factual issues surrounding Murphy's alleged tax evasion and AUSA Emery's cognitive disability are no longer relevant to this case. We agree with the dissent that no judge has found that Murphy did not evade taxes, and we take seriously the allegations against Murphy that the IRS continues to make in its filings.
 
 [7]
 

 If we were to adopt the IRS's definition, we would render § 7433(e) a near nullity. As the bankruptcy court ably described it below:
 

 [t]he IRS's position is that, as far as tax collection and § 523(a)(1)(C) goes, it retains the authority to make up its mind whether tax obligations are discharged, that it may act unilaterally on the basis of its conclusions, and that it encounters no risk for doing so, as long as it has a "good faith" or "reasonable belief" for its conclusion.
 

 In re Murphy
 
 ,
 
 2013 WL 6799251
 
 , at *6.
 

 Under this view, it is hard to imagine a case where a taxpayer could ever collect against the government for a violation of the automatic stay or discharge order. Although the dissent forcefully argues that the sovereign immunity canon compels this narrow definition of "willfully violates," we ultimately find that the dissent's position "presents an unduly restrictiv[e] reading of the congressional waiver of sovereign immunity, rather than a realistic assessment of legislative intent."
 
 Franconia Assocs.
 
 v.
 
 United States
 
 ,
 
 536 U.S. 129
 
 , 145,
 
 122 S.Ct. 1993
 
 ,
 
 153 L.Ed.2d 132
 
 (2002) (alteration in original) (internal quotation marks and citations omitted).
 

 VI.
 

 The IRS had several opportunities to obtain a judicial determination that Murphy's tax obligations were excepted from discharge. The bankruptcy court determined, based on the evidence presented to it, that Murphy's tax obligations were not excepted from discharge. In such cases where a taxpayer's debt is found to be discharged, Congress has allowed the taxpayer to pursue an action against the United
 States under § 7433(e) if an employee of the IRS knew of the discharge order and took an intentional action that violated the order.
 

 For the foregoing reasons, we affirm.
 

 Prior to filing his complaint, Murphy exhausted his administrative remedies as required by
 
 26 U.S.C. § 7433
 
 (1).
 

 Section 7433(e) allows a debtor "to recover damages against
 
 the United States
 
 ." (emphasis added). As the district court noted in its September 7, 2016 decision, it appears that the United States, and not the IRS, "is the real party in interest" in this case.
 
 Murphy
 
 ,
 
 564 B.R. at
 
 98 n.1. "Like the appellant's brief, however, for simplicity" we will refer "to the appellant as 'the IRS.' "
 

 Id.
 

 A similar provision can be found today at
 
 11 U.S.C. § 362
 
 (k)(1).
 

 As Murphy correctly notes in his brief, when we later adopted the generally accepted definition of "willful violation" for violations of automatic stays in
 
 Fleet Mortgage Group, Inc.
 
 v.
 
 Kaneb
 
 , we did not reference any departure from our prior precedent. In fact, we adopted the generally accepted definition because we "decline[d] to create a new standard for willfulness."
 
 Fleet Mortg. Grp., Inc.
 
 ,
 
 196 F.3d at 268
 
 .
 

 One judge dissented from this part of
 
 In re University Medical Center
 
 , stating that he would have found a willful violation of the automatic stay because the Third Circuit had already "explicitly rejected good faith as a defense to 'willfulness.' "
 
 973 F.2d at 1089
 
 (Becker, J., concurring in part and dissenting in part).
 

 In this case, the IRS has stipulated to the amount of damages as a part of the settlement agreement.
 

 Based on the odd procedural history of this case, no factfinder has yet resolved whether AUSA Emery's disability caused him to file the deficient opposition to summary judgment. The district court's 2016 order remanded the case back to the bankruptcy court in part so the bankruptcy court could resolve these issues and thereby determine whether application of offensive collateral estoppel against the IRS was proper.
 
 Murphy
 
 ,
 
 564 B.R. at 111-12
 
 . Ultimately, the parties left the issue open in their settlement, in part because of "the desire to avoid not only their respective risk of loss on the determination of whether offensive collateral estoppel should apply, but also the potential for the determination to entail substantial litigating expenses (including possible expert medical testimony) and substantial delay."