SELYA, Circuit Judge.
 

 The appellant, Frederick Henry Vahls-ing, guaranteed a contract on which the appellee, Commercial Union Insurance Company, had bound itself as surety. The contractor defaulted, and Commercial Union instituted litigation in the state courts of Texas to exonerate itself as surety and to collect on Vahlsing’s guarantee. Commercial Union’s lawyers obtained a substantial judgment and, after efforts to obtain payment were unavailing, began post-judgment garnishment proceedings, again in a Texas state court.
 

 Vahlsing proved to be an evasive target. For almost two years, Commercial Union’s lawyers tried unsuccessfully to serve Vahlsing with discovery requests. Eventually, Commercial Union sought and received the court’s permission to make “substituted service” of the discovery requests on any adult who could be found at Vahls-ing’s place of residence. Using this procedure, Commercial Union attempted to serve Vahlsing in March 1982 with post-judgment interrogatories and a notice of deposition, but the persons served either refused to take or returned the documents.
 

 Soon afterward, on March 29, 1982, Vahlsing filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. Vahlsing identified Commercial Union as one of his creditors. Under normal circumstances, the court would have provided Commercial Union with notice of the petition, thus notifying it of the automatic stay which comes into effect upon the filing of a bankruptcy petition. 11 U.S.C. § 362(a). Commercial Union contends that it never received such notice; at trial, it introduced evidence in
 
 *489
 
 the form of mail logs to support that contention.
 

 In any event, Commercial Union went ahead with its efforts to collect on the judgment. It filed a motion for contempt, which the Texas court allowed after Vahls-ing failed to respond to a show cause order. The Texas court issued a judgment of contempt, and sentenced Vahlsing to 180 days in jail.
 

 Vahlsing was arrested on August 9, 1982 in his home town of McAllen, Texas, and incarcerated at the Hidalgo County Jail. That evening, Steven Mock — Commercial Union’s lawyer — met with Vahlsing at the jail. Vahlsing claims that Mock demanded payment of the outstanding judgment, and threatened to let Vahlsing “stay there and rot” if he did not pay. Mock denies this charge. Both parties agree, however, that Vahlsing informed Mock of the petition in bankruptcy.
 

 Mock, attending to other business, did not confirm the fact of the petition until August 11. Vahlsing’s lawyer asked Mock to seek rescission of the contempt order, but Mock declined. Vahlsing’s lawyer then filed a motion to rescind, which the 151st District Court of Harris County, Texas heard on August 13. Mock attended the hearing and, while he did not strenuously oppose the motion, neither did he urge Vahlsing’s release. The District Court denied the motion, apparently on the ground that
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), had ruled that Congress’ grant of jurisdiction to the bankruptcy courts was unconstitutional. Vahlsing remained in jail.
 

 Vahlsing then wrote a letter to the bankruptcy court, which the court construed as an application for a writ of habeas corpus. The bankruptcy court ordered that Vahls-ing be released on bail. Vahlsing was released on August 20, 1982, having spent eleven days in jail. On September 28, 1982 the bankruptcy court held a hearing on the application for a writ of habeas corpus. Mock again appeared. Again, he did not oppose the application in so many words, but he did take the position that as long as Commercial Union was ignorant of the petition, the stay was not automatic. The bankruptcy court rejected this position, found that Vahlsing’s commitment “was void by reason of the filing of the petition in bankruptcy”, and ordered Vahlsing’s release from bail.
 

 In 1983 Vahlsing brought suit in the United States District Court for the District of Massachusetts (where Commercial Union had its home office). Vahlsing claimed entitlement to recovery on common law theories of negligence, abuse of process, false imprisonment and intentional infliction of emotional distress, and under 42 U.S.C. § 1983. At trial, after Vahlsing had presented his case, the district court granted Commercial Union a directed verdict on the abuse of process claim. The jury returned a verdict in favor of Commercial Union on the remaining counts. This appeal followed.
 

 Vahlsing’s
 
 pro se
 
 appellate briefs are marked by a persistent misapprehension of the effect of the bankruptcy court proceedings on the case at hand. Vahlsing seems to believe that Commercial Union’s liability was conclusively litigated after the bankruptcy court ruled that the arrest was void by virtue of the automatic stay. But there is a difference between the
 
 effect
 
 of
 
 actions
 
 taken in violation of the stay, and the
 
 culpability
 
 of the
 
 actors
 
 who take such acts. The actions may be void
 
 ab initio, see In re Advent Corp.,
 
 24 B.R. 612, 614 (Bankr.App. 1st Cir.1982),
 
 but see Sikes v. Global Marine, Inc.,
 
 881 F.2d 176, 179 (5th Cir.1989) (acts violating stay are voidable rather than void), but the actor’s culpability is a question to be settled by reference to some extrinsic legal standard, whether it is the “willfulness” requirement of 11 U.S.C. § 362(h), or the various common-law and statutory theories under which Vahlsing chose to bring suit.
 
 [1]
 

 
 *490
 
 Violation of the stay, in other words, is not a strict liability tort. Recovery under one or more of the legal theories advanced by Vahlsing requires proof that Commercial Union violated the stay under circumstances which satisfy the elements of the theory in question. We therefore turn to the alleged bases of liability.
 

 Abuse of Process
 

 In order to uphold the grant of a directed verdict, we must find that, viewing the evidence in the light most favorable to Vahlsing, reasonable jurors could have come to but one conclusion.
 
 Goldstein v. Kelleher,
 
 728 F.2d 32, 39 (1st Cir.1984). We must give Vahlsing the benefit of every legitimate inference, but we are not required to indulge in conjecture or speculation,
 
 id.,
 
 nor must we neglect uncontradicted evidence introduced by Commercial Union.
 
 Carlson v. American Safety Equipment Corp.,
 
 528 F.2d 384, 385 (1st Cir.1976).
 

 Under Texas law (which governed the common-law claims in this case), abuse of process has three elements: (1) that the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage to the plaintiff.
 
 Baubles & Beads v. Louis Vuitton, S.A.,
 
 766 S.W.2d 377, 378-79 (Tex.Ct.App.1989).
 

 The district court acknowledged that Vahlsing had presented evidence to show that attorney Mock had represented Vahlsing’s sister in addition to Commercial Union, that the sister may have harbored vindictive feelings toward Vahlsing, and that Mock may have served the sister’s vindictiveness when he filed the motion for contempt that led to Vahlsing’s incarceration. However, the district court ruled, “there’s no sufficient evidence in my mind that Commercial Union’s
 
 primary purpose
 
 was to do other than collect the debt” (emphasis added).
 

 This was a correct application of the facts to the law. When process is employed for the purpose for which the law intends its use, no abuse of process occurs even though the person using the process may have an improper motive in addition to his lawful intention.
 
 Baubles & Beads v. Louis Vuitton, S.A.,
 
 766 S.W.2d at 379.
 
 See also
 
 Restatement (Second) of Torts § 682, comment b (“there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior motive of benefit to the defendant”). While Mock’s actions may have incidentally served the sister’s spite, the evidence left no doubt that
 
 Commercial Union’s
 
 primary purpose in instituting the proceedings that put Vahlsing in jail was the collection of a court judgment. A reasonable jury could have reached no other conclusion.
 

 Negligence
 

 The district court correctly instruct ed the jury that a negligence claim contains four basic elements: (1) that the defendant owed the plaintiff a duty of care, (2) that the defendant was negligent (i.e. failed to use reasonable care) in the discharge of that duty, (3) that the defendant’s negligence was the proximate cause of the plaintiff’s injury, and (4) that the plaintiff suffered compensable damage as a result. About the duty requirement, the court told the jury (1) that Commercial Union “owes to everyone the duty to conduct itself in accordance with the law as a reasonably careful, good corporate citizen”, (2) that attorney Mock had a “responsibility for conducting himself as a reasonably careful attorney” who was “reasonably familiar with the law,” but (3) that Mock owed a duty “first and foremost” to his client. Finally, the court said:
 

 [I]f you believe the evidence that at a certain time Mr. Mock became aware
 
 *491
 
 that Mr. Vahlsing claimed to have filed for bankruptcy, you may consider, having in mind that Mr. Vahlsing was then imprisoned, and having in mind what the stakes were there, a person’s liberty, what duty, if any, Mr. Mock had to the legal system to make representations to straighten out that matter. I leave that to you, but you may consider it, whether Mr. Mock in the premises [sic] had any duty to do anything, to straighten out with Mr. Vahlsing there in jail claiming to have filed bankruptcy.
 

 Vahlsing attacks this last instruction. He cites a number of cases from the bankruptcy courts which say that a creditor, after it learns of the automatic stay, has an affirmative duty to undo actions it took in violation of the stay and to restore the status quo.
 
 See In re Adams,
 
 94 B.R. 838, 851 (Bankr.E.D.Pa.1989);
 
 In re Shropshire,
 
 25 B.R. 128, 130 (Bankr.W.D.Wash.1982);
 
 In re Shiko,
 
 21 B.R. 203, 204 (Bankr.M.D.Pa.1982);
 
 In re Miller,
 
 10 B.R. 778, 780 (Bankr.D.Md.1981). The district court erred, Vahlsing says, when it asked the jury to determine the existence and extent of Commercial Union’s duty to secure his release from jail once Commercial Union had learned of the petition in bankruptcy and the automatic stay.
 

 Vahlsing says that the district court should have taken the issue of negligence liability away from the jury altogether. He apparently wants us to impose an
 
 absolute
 
 duty to restore the status quo on those who have violated the automatic stay. Whatever the teaching of the bankruptcy cases he cites, this is clearly not the correct standard for a negligence claim.
 
 [2]
 
 The essence of the tort is the reasonableness of the defendant’s actions in light of the duty imposed on him.
 

 Vahlsing’s argument is that the district court incorrectly left it to the jury to decide whether Commercial Union owed Vahlsing an affirmative duty to seek his release from jail. As a general rule, the existence of a duty of care is a question of law to be decided by the court.
 
 Producers Grain Corp. v. Lindsay,
 
 603 S.W.2d 326, 329 (Tex.Civ.App.1980).
 
 See also Federal Express Corp. v. State of Rhode Island, Department of Transportation,
 
 664 F.2d 830, 835 (1st Cir.1981). The district court might have better instructed the jury that Mock had a duty to use reasonable care to obtain Vahlsing's release if the jury found (1) that Mock’s actions had caused Vahls-ing’s imprisonment, (2) that Mock learned of the petition in bankruptcy while Vahls-ing was still in jail, and (3) that Mock was at that time in a position to do for Vahlsing what Vahlsing could not do for himself.
 
 See
 
 Restatement (Second) of Torts § 322 (an actor who knows or has reason to know that his actions, whether tortious or innocent, have caused such harm to another as to make him helpless and in danger of further harm, is under a duty to “exercise reasonable care to prevent such further harm”).
 

 We need not decide whether the court’s instruction was erroneous or prejudicial, however, since Vahlsing’s trial attorney did not object to the instruction after it was given, even though the court gave him an opportunity to do so. “According to a long line of precedents in this circuit, such an omission constitutes waiver of the objection pursuant to Federal Rule of Civil Procedure 51.”
 
 Wells Real Estate, Inc. v. Greater Lowell Board of Realtors,
 
 850 F.2d 803, 809 (1st Cir.1988) and cases cited therein. Absent a timely objection, the court’s instruction became the law of the case.
 
 Id.
 

 False Imprisonment
 

 The district court correctly instructed the jury that under Texas law the
 
 *492
 
 elements of the tort of false imprisonment are (1) a “willful” detention of the plaintiff, (2) without authority of law and (3) without the plaintiffs consent.
 
 See J.C. Penney Co. v. Duran,
 
 479 S.W.2d 374, 379 (Tex.Civ.App.1972). The district court went on to tell the jury that “willful” means something more than that Commercial Union intended to have Vahlsing detained. In order to prove willfulness, the court said, Vahlsing had to show that Commercial Union “in fact knew, not that they were careless, not that they blundered, but that they in fact knew that there was no right to pick him up and have him put in jail, no right even to ask a judge to do that, or that they recklessly disregarded Mr. Vahlsing’s rights, recklessly disregarded the possibility that he might have filed for bankruptcy, and went ahead in reckless disregard of that fact_”
 

 As a general statement of the law of false imprisonment, this part of the instruction might arguably be incorrect. Ordinarily, the requisite intent is, in fact, merely the intent to confine.
 
 See
 
 Restatement (Second) of Torts § 35(1) (an actor is subject to liability to another for false imprisonment if,
 
 inter alia,
 
 he acts intending to confine the other within boundaries fixed by the actor).
 

 Under the circumstances of this case, however, the instruction was on the mark. Commercial Union did not physically confine Vahlsing; rather, it caused him to be confined by the police acting pursuant to a warrant issued by the state court. Under Texas law, “it is a complete defense to an action for false imprisonment that the arrest or detention was by virtue of process, legally sufficient in form and duly issued by a court or official having jurisdiction to issue it.”
 
 Tandy Corporation v. McGregor,
 
 527 S.W.2d 246, 248 (Tex.Civ.App.1975). A court has “jurisdiction to issue” a particular form of process (e.g. an arrest warrant) if the court generally has the authority to issue process of that kind. “Such authority back of a warrant legal on its face is sufficient justification for the arrest even though the proceedings back of its issuance were irregular, or void ... ”,
 
 Pate v. Stevens,
 
 257 S.W.2d 763, 767 (Tex.Civ.App.1953), for example, even if the automatic stay rendered the warrant void
 
 ab initio.
 

 Under these circumstances, the only sensible approach to the “willfulness” requirement was the approach taken by the district court. A defendant who has effected the plaintiffs confinement through process that is valid on its face can have acted “willfully” only if the process was “maliciously or wrongfully obtained,”
 
 see Brewer v. Blackwell,
 
 692 F.2d 387, 400 (5th Cir.1982) (Louisiana law) — that is, only if the defendant knew that the process was for some reason void.
 

 The district court correctly stated the law, and there was ample evidence to support the jury’s verdict. Mock testified that he did not know of the automatic stay until after Vahlsing was imprisoned; Commercial Union’s mail logs supported its contention that it did not receive notice of the petition in bankruptcy. The jury was entitled to credit this evidence and find for the defendant.
 
 See Computer Systems Engineering, Inc. v. Qantel Corp.,
 
 740 F.2d 59, 65 (1st Cir.1984) (jury verdict is reviewed in light most favorable to appellee).
 

 Intentional Infliction and 42 U.S.C. § 1983
 

 We need not linger over these claims. In both cases the district court properly instructed the jury, and the evidence was more than sufficient to support the jury’s determination.
 

 Affirmed.
 

 [1]
 

 . Section 362(h) provides that “An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Section 362(h) was enacted in 1984,
 
 *490
 
 and thus was not available to Vahlsing.
 
 In re Wagner,
 
 87 B.R. 612 (Bankr.C.D.Cal.1988). Before the passage of section 362(h), the law was "unsettled as to whether violations of the automatic stay ... g[a]ve rise to a private right of action for the recovery of damages."
 
 In re De Lay,
 
 48 B.R. 282, 286 (W.D.Mo.1984).
 

 [2]
 

 . The bankruptcy cases are not consistent. For example, in
 
 In re Miller,
 
 10 B.R. 778, 780 (Bankr.D.Md.1981), the court ruled that it "is implied in § 362 that a creditor is under an obligation to maintain the status quo as of the moment of the filing of the petition and to take
 
 whatever affirmative action is necessary
 
 to do so” (emphasis added). In
 
 In re Adams,
 
 94 B.R. 838, 851 (Bankr.E.D.Pa.1989), on the other hand, the court said that "a party who has acted in violation of the stay without previous knowledge of the debtor’s bankruptcy filing is obliged to take
 
 any reasonable action
 
 to undo a previous, innocent violation of the stay” (emphasis added).