In re David William BROWN, Debtor.

**Bankruptcy Recovery Network, Appellant,**

v.

**David William Brown and United States Trustee, Appellees.**

No. CV98–3638 SVW.

Bankruptcy No. LA 97–16062 LF.

United States District Court, C.D. California, Los Angeles Division.

April 29, 1999.

---

David Brown, San Pedro, CA, for Debtor.

Diane Spence, Legal Assistant, Bankruptcy Recovery Network, Tustin, CA, for Respondent.

Helen Ryan Franzer, Cerritos, CA, for Chapter 7 Trustee.

Ronald A. Reiter, Attorney General of State of California, Los Angeles, CA, for Daniel E. Lungren.

Ray McCallen, Los Angeles, CA, for Federal Trade Commission.

## ORDER REMANDING CASE

WILSON, District Judge.

### I. Introduction

Debtor William Brown filed a pro se Chapter 7 petition in February 1997. His bankruptcy schedules listed a 20–inch gold necklace as an asset of the estate with a stated value of $760.[1] The debtor scheduled the debt on this item as secured, subject to a purchase money security interest held by the jewelry store from which he purchased the necklace. Mr. Brown filed a statement of intention pursuant to 11 U.S.C. § 521 which indicated his intent to reaffirm the obligation.

The jewelry store assigned its claim to Bankruptcy Recovery Network ("BRN").[2] BRN sent Mr. Brown three letters in April and May of 1997, during the pendency of the bankruptcy case, which asked him to sign a reaffirmation agreement provided with the first letter. Four days after the first letter, Mr. Brown sent an unsolicited payment of fifteen dollars. Seven days after the last letter, still before discharge, BRN called Mr. Brown to encourage him to sign the agreement. Mr. Brown never signed, nor did he file, any agreement with the Bankruptcy Court.

On June 4, 1997, Mr. Brown received the discharge of his bankruptcy. One month later, BRN informed him that the bankruptcy did not discharge the lien on the necklace and BRN asserted its right to reclaim the necklace. On August 7, 1997, BRN called Mr. Brown and talked him into an oral agreement. That agreement provided that BRN would not exercise its rights to reclaim the necklace if Mr. Brown paid BRN the prepetition balance on the necklace in the same monthly payments of fifteen dollars, subject to a lower interest rate of twelve percent per year. BRN documented the agreement by sending a "Post Discharge Property Retention Agreement" ("PDPRA") to Mr. Brown. BRN never filed this document with the Bankruptcy Court; the Bankruptcy Court

1. Amicus notes that this value apparently consisted of the price of the necklace plus tax and a $95 insurance policy. It further points out that the agreement lists the purchase price of the necklace as $615.

2. The Bankruptcy Court described BRN as "an entity that specializes in collections based upon assignments of bankruptcy claims and related purchase money security interests." Order at 2.

only learned of the agreement through a member of another judge's staff who knew Mr. Brown's family and questioned the agreement's validity.

On September 17, 1997, the Bankruptcy Court issued an Order to Show Cause why it should not sanction BRN for violation of 11 U.S.C. § 524 and issue an injunction against further agreements without approval of a court. At the hearing on the Order to Show Cause, Mr. Brown stated that he did not possess the necklace but had given it as a gift to someone who had since lost it. He testified that welfare payments provided his only source of income except for a few weeks of work at Boston Market. His testimony revealed significant confusion about his understanding of the bankruptcy process.

On April 27, 1998, the Bankruptcy Court issued its ruling. The Bankruptcy Court characterized the issue as "whether a determined purchase money interest holder can bypass the statutory protections of the reaffirmation requirements by calling its agreement for post-discharge installment payments by some other name." Order at 3. The Bankruptcy Court first explained that BRN did not comply with the provisions of Section 524 governing reaffirmations. The Bankruptcy Court noted that BRN instead claimed that the agreement represented a new bargain in which BRN refused to undertake a replevin action and Mr. Brown promised to pay the same monthly payment, on the amount unpaid before bankruptcy, but with a reduced interest rate. The Bankruptcy Court distinguished the authority advanced by BRN and held such an agreement a reaffirmation agreement based on the same obligations that existed prepetition. The Bankruptcy Court also found that the agreement lacked consideration as a matter of law because Mr. Brown no longer possessed the necklace. BRN could not offer to forbear reclamation of goods that Mr. Brown did not have. The Order further observed that BRN follows a routine business practice of evading "the letter and spirit of Section 524." The Bankruptcy Court concluded by declaring the agreement void and unenforceable and sanctioned BRN in the amount of $200. The Bankruptcy Court limited this amount due to the fact that Mr. Brown only paid fifteen dollars to BRN. The Bankruptcy Court also stated that it would report BRN to the proper authorities for investigation into their debt collection practices. Apparently this included referring the Order to the Attorney General of the State of California, who later filed an amicus brief with this Court. BRN appealed the decision of the Bankruptcy Court on September 17, 1998.

## II. Analysis

### A. Standard of Review

■ This Court applies the clearly erroneous standard to the Bankruptcy Court's findings of fact and reviews its conclusions of law de novo. *In re Lazar*, 83 F.3d 306, 308 (9th Cir.1996); *Great Western Bank v. Sierra Woods Group*, 953 F.2d 1174, 1176 (9th Cir.1992); Fed.R.Bankr.P. 801.

### B. Factual Record

■ The Bankruptcy Court provided two independent bases for its invalidation of the PDPRA: (1) the PDPRA constituted an invalid reaffirmation agreement in violation of 11 U.S.C. § 524 and (2) no consideration existed for the PDPRA because BRN knew that the debtor did not still possess the necklace and therefore BRN had no right to forebear against the debtor. The Court has analyzed the issue of section 524 in significant depth. However, a factual issue complicates the review of the second basis. While the Bankruptcy Court found that the debtor no longer possessed the necklace, that Court did not specify when the debtor gave the necklace away. BRN contends that if the debtor gifted the necklace after the petition then BRN gave valuable consideration by foregoing a suit for conversion. Because the record does not reflect the Bankruptcy Court's findings of fact on this issue, the

Court must remand the matter for clarification.

The Court adds one observation for purposes of the remand. The Bankruptcy Court held BRN in civil contempt for violating the discharge injunction. However, the Bankruptcy Court did not explain its underlying analysis in imposing sanctions. Obviously, if the Bankruptcy Court concluded that the debtor gifted the necklace before his petition then that action would appear to establish a willful violation of a specific Order—the discharge injunction. However, if the Bankruptcy Court relied on the fact that agreements such as the PDPRA inherently violate the discharge injunction because they constitute impermissible reaffirmation agreements, the Court would be interested in the Bankruptcy Court's findings with respect to the requisite clarity of the injunction. That is, if the injunction did not clearly prohibit agreements such as the PDPRA, does that affect the contempt analysis?[3] The Court found several cases which might prove helpful on remand, but the Court certainly does not require the use of any of these cases. *See Diamontiney v. Borg,* 918 F.2d 793, 797 (9th Cir.1990) (explaining that action based on reasonable interpretation of court's order prevents application of contempt); *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1146 (9th Cir.1983) (requiring party to take all reasonable steps to comply with court order). To the extent that a comparison with the provisions of 11 U.S.C. § 362 might prove useful, if at all, the Court also found: *Vahlsing v. Commercial Union Ins. Co.,* 928 F.2d 486, 489–90 (1st Cir.1991); *Crysen/Montenay Energy Co. v. Esselen Assocs.,* 902 F.2d 1098, 1104 (2d Cir.1990); *In re Taylor,* 884 F.2d 478, 482–83 (9th Cir.1989).

Accordingly, the Court REMANDS this matter to the Bankruptcy Court for clarification of two issues: (1) the factual findings regarding when the debtor gifted the necklace and (2) a further analysis of the imposition of civil contempt, especially in light of the ambiguity which might exist in the law regarding section 524.

IT IS SO ORDERED.

---

3. The Court notes that the cases which construe section 524 provide little precedential authority and often, almost inexplicably, conflict. *See In re Watson,* 192 B.R. 739 (9th Cir. BAP 1996); *In re Getzoff,* 180 B.R. 572 (9th Cir. BAP 1995); *In re Heirholzer,* 170 B.R. 938 (Bankr.N.D.Ohio 1994); *In re Petersen,* 110 B.R. 946 (Bankr.D.Colo.1990); *In re Button,* 18 B.R. 171 (Bankr.W.D.N.Y.1982). Thus, some authority might suggest that agreements such as the PDPRA might not violate the injunction.