LYNCH, Circuit Judge, dissenting.
 

 With the greatest respect for my esteemed colleagues, I think the majority gets this one wrong. To the best of my knowledge, this is the first opinion by a circuit court of appeals construing the phrase "willfully violates" in
 
 26 U.S.C. § 7433
 
 (e), enacted in 1998, and, importantly, the first to deprive the United States, through the IRS, of its sovereign immunity under that statute even where the United States acted on a reasonable and good faith belief that a discharge injunction did not apply to its collection efforts against a tax debtor.
 

 To be clear, there is no explicit waiver by Congress of sovereign immunity under these circumstances. The majority attempts to infer such a waiver. To the contrary, the Bankruptcy Code itself provides that a discharge injunction does not apply to a tax debt "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."
 
 11 U.S.C. § 523
 
 (a)(1)(C). And the IRS here says it believed in good faith that the tax debts it attempted to collect fell into this exception.
 

 Further, the plain meaning of the phrase "willfully violates," Supreme Court precedent interpreting the term "willful" and the phrase "willful violation," the structure of the statutory scheme, and the sovereign immunity canon all point toward § 7433(e) not stripping the IRS of a reasonable good faith defense. Because the majority opinion deprives the United States of sovereign immunity and does so for reasons which I conclude are inconsistent with Congressional intent, Supreme Court precedent, and with rules of construction, I lay out the basis for my dissent.
 

 A.
 
 Sovereign Immunity
 

 Sovereign immunity is waived only if Congress clearly intended as much.
 
 See
 

 F.A.A.
 
 v.
 
 Cooper
 
 ,
 
 566 U.S. 284
 
 , 290,
 
 132 S.Ct. 1441
 
 ,
 
 182 L.Ed.2d 497
 
 (2012). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' "
 
 Irwin
 
 v.
 
 Dep't of Veterans Affairs
 
 ,
 
 498 U.S. 89
 
 , 95,
 
 111 S.Ct. 453
 
 ,
 
 112 L.Ed.2d 435
 
 (1990) (quoting
 
 United States
 
 v.
 
 Mitchell
 
 ,
 
 445 U.S. 535
 
 , 538,
 
 100 S.Ct. 1349
 
 ,
 
 63 L.Ed.2d 607
 
 (1980) ).
 

 "[A]ny ambiguities in the scope of a waiver" are to be construed "in favor of the sovereign."
 
 Cooper
 
 ,
 
 566 U.S. at 291
 
 ,
 
 132 S.Ct. 1441
 
 . "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government."
 

 Id.
 

 at 290-91
 
 ,
 
 132 S.Ct. 1441
 
 . Consequently, we must determine whether § 7433(e) can be plausibly interpreted
 
 not
 
 to authorize money damages against the United States where the IRS acted reasonably and in good faith to collect a tax debt. The statute can and should be so interpreted. In my view, such an interpretation is far more than plausible.
 

 There is no expression by Congress here of a waiver of sovereign immunity where the IRS acts reasonably and in good faith to collect tax debts it reasonably believes do not fall within the scope of a discharge injunction. When Congress intends to waive sovereign immunity, it knows how to do so explicitly.
 
 See, e.g.
 
 ,
 
 11 U.S.C. § 106
 
 (a) ("Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following [enumerated provisions of
 the Bankruptcy Code]."); 26 U.S.C. 7433(a) (creating a cause of action for damages against the United States "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title"). Congress did not do so here and it easily could have.
 
 [8]
 

 B.
 
 Text of
 
 26 U.S.C. § 7433
 
 (e)
 

 As a matter of statutory construction, we must first look the text of § 7433(e).
 
 See
 

 SAS Inst., Inc.
 
 v.
 
 Iancu
 
 , --- U.S. ----,
 
 138 S.Ct. 1348
 
 , 1354,
 
 200 L.Ed.2d 695
 
 (2018) ;
 
 Mississippi ex rel. Hood
 
 v.
 
 AU Optronics Corp.
 
 ,
 
 571 U.S. 161
 
 , 168,
 
 134 S.Ct. 736
 
 ,
 
 187 L.Ed.2d 654
 
 (2014). Section 7433(e) states that, "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the [IRS]
 
 willfully violates
 
 any provision of section 362... or 524 ... of title 11 ...[,] such taxpayer may petition the bankruptcy court to recover damages against the United States." (emphasis added).
 

 This case turns on how we interpret the phrase "willfully violates." "Willfully" modifies "violates," and the ordinary meaning of "willful," which controls where the term is not defined in the statute,
 
 see
 

 Octane Fitness, LLC
 
 v.
 
 ICON Health & Fitness, Inc.
 
 , --- U.S. ----,
 
 134 S.Ct. 1749
 
 , 1756,
 
 188 L.Ed.2d 816
 
 (2014), is "deliberate" or "on purpose."
 
 E.g.
 
 ,
 
 Wilful
 
 , Oxford English Dictionary Online, http://www.oed.com/view/Entry/229028 (last visited May 25, 2018) ("Done on purpose or wittingly; purposed, deliberate, intentional; not accidental or casual.
 
 Chiefly, now always, in bad sense, of an action either evil in itself or blameworthy in the particular case
 
 " (emphasis added) );
 
 Willful
 
 , Merriam-Webster's Dictionary Online, https://www.merriam-webster.com/dictionary/willful (last visited May 25, 2018) ("done deliberately"). So the IRS has to deliberately violate a discharge injunction to be liable under § 7433(e).
 

 Applying these definitions of "willful" here, the statute should (and certainly can plausibly) be read to provide the United States with a good faith defense. "Willfully" requires that the
 
 violation
 
 be done "deliberately" or "knowingly." In this case, that would mean an IRS employee must have violated the discharge injunction deliberately, with knowledge that he was violating the injunction.
 
 [9]
 

 Under other provisions of the Bankruptcy Code, no creditor, whether the IRS or another, necessarily violates a discharge injunction merely by trying to collect a debt while aware of the injunction.
 
 See, e.g.
 
 ,
 
 United States
 
 v.
 
 Ellsworth
 
 (
 
 In re Ellsworth
 
 ),
 
 158 B.R. 856
 
 , 858 (Bankr. M.D. Fl. 1993). Rather, a discharge injunction is violated only if the particular debt that the creditor is trying to collect was actually discharged as a result of the injunction. But IRS debts receive special treatment. Section 523(a) lists several types of debts that are not dischargeable, and that list includes tax debts "with respect to which the debtor ... willfully attempted ... to evade or defeat such tax." When the IRS, knowing of a discharge injunction, makes tax debt collection efforts, and it has reasonably and in good faith, even if erroneously, determined that the tax debt was not dischargeable and thus was not covered by the discharge injunction, the IRS's "violation" was not done deliberately merely because its assessment of the effect of the injunction was incorrect.
 

 No judge in this case has even held that the debtor did not in fact make "a fraudulent return or willfully attempt in any manner to evade or defeat such tax."
 

 Id.
 

 § 523(a)(1)(C). At most, the initial bankruptcy judge held that the IRS attorney (who the IRS maintains had been made incompetent by the onset of dementia) did not "present [the] evidentiary quality material" required to prove tax fraud. The IRS also maintains that the disabled attorney also did not give notice to the IRS of his actions in the case, leaving the IRS unaware of his incapacity and his failure to provide adequate evidence. The extent and timing of the attorney's disability is relevant to whether an IRS employee "willfully violate[d]" the discharge injunction under the plain meaning of that phrase. Yet the majority's holding would render these factors irrelevant.
 

 C.
 
 Pre-Section-7433(e) Case Law
 

 1.
 
 Supreme Court Precedent
 

 The majority reasons that the key to this case is found in the premise that Congress is presumed to know how the law has been interpreted by the courts, and then to legislate against that backdrop.
 
 See
 

 Hood
 
 ,
 
 571 U.S. at 169
 
 ,
 
 134 S.Ct. 736
 
 ;
 
 Bragdon
 
 v.
 
 Abbott
 
 ,
 
 524 U.S. 624
 
 , 644-45,
 
 118 S.Ct. 2196
 
 ,
 
 141 L.Ed.2d 540
 
 (1998).
 

 The majority, though, in my view, misapplies the premise. I disagree that we should interpret § 7433(e) based on how some
 
 circuit
 
 courts had interpreted the phrase "willful violation" in the context of a different and older statute,
 
 11 U.S.C. § 362
 
 (h). We cannot ignore the decades of Supreme Court case law interpreting the term "willful" and the phrase "willful violation." Congress, after all, did not simply say "violates"; § 7433(e) modifies and restricts the word "violates" with the word "willful."
 

 If we are to "presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts,"
 
 Goodyear Atomic Corp.
 
 v.
 
 Miller
 
 ,
 
 486 U.S. 174
 
 , 185,
 
 108 S.Ct. 1704
 
 ,
 
 100 L.Ed.2d 158
 
 (1988), then we should presume here that Congress knew about clearly established Supreme Court precedent. I would have thought that Supreme Court law would be far more relevant than the general and not uniform pronouncement of some circuits.
 

 Congress would have been particularly aware of how the Supreme Court interpreted the term "willful" in
 
 Kawaauhau
 
 v.
 
 Geiger
 
 ,
 
 523 U.S. 57
 
 ,
 
 118 S.Ct. 974
 
 ,
 
 140 L.Ed.2d 90
 
 (1998), which was decided just months before § 7433(e) was passed.
 
 Kawaauhau
 
 was a natural place to look: it pertained to
 
 11 U.S.C. § 523
 
 , a part of the Bankruptcy Code that lists the types of debts that cannot be discharged.
 
 See
 

 Kawaauhau
 
 ,
 
 523 U.S. at 59
 
 ,
 
 118 S.Ct. 974
 
 . Section 523 is a statute of intrinsic importance when determining whether a discharge injunction was willfully violated. In
 
 Kawaauhau
 
 , the Court determined that
 "willful ... injury" included only acts that were specifically intended to cause injury, not all intentional acts that resulted in injury.
 
 523 U.S. at 61
 
 ,
 
 118 S.Ct. 974
 
 . The Court explained its holding as follows:
 

 The word "willful" ... modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional
 
 injury
 
 , not merely a deliberate or intentional
 
 act
 
 that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words,
 
 i.e.
 
 , "reckless" or "negligent," to modify "injury."
 

 Id.
 

 That logic maps directly onto the language of § 7433(e). "Willfully" modifies "violates," so liability requires a deliberate or intentional "violation." Had Congress intended otherwise, it would have said so clearly. We should assume Congress knew about this latest Supreme Court interpretation of similar language in the bankruptcy context when it was drafting § 7433(e).
 

 Moreover, the Supreme Court, consistent with
 
 Kawaauhau
 
 , had long held that "willful violation" requires that the violator "knew or showed reckless disregard for the matter of whether its conduct was prohibited."
 
 Trans World Airlines, Inc.
 
 v.
 
 Thurston
 
 ,
 
 469 U.S. 111
 
 , 128-29,
 
 105 S.Ct. 613
 
 ,
 
 83 L.Ed.2d 523
 
 (1985). The Supreme Court, before § 7433(e) was enacted, also had repeatedly held that the term "willful" requires more than negligence.
 
 See
 

 Bryan
 
 v.
 
 United States
 
 ,
 
 524 U.S. 184
 
 , 196,
 
 118 S.Ct. 1939
 
 ,
 
 141 L.Ed.2d 197
 
 (1998) (holding that a criminal statute's use of "willful" required "knowledge that the conduct is unlawful");
 
 McLaughlin
 
 v.
 
 Richland Shoe Co.
 
 ,
 
 486 U.S. 128
 
 , 133,
 
 108 S.Ct. 1677
 
 ,
 
 100 L.Ed.2d 115
 
 (1988) ("The word 'willful' is widely used in the law, and ... is generally understood to refer to conduct that is not merely negligent.");
 
 United States
 
 v.
 
 Ill. Cent. R. Co.
 
 ,
 
 303 U.S. 239
 
 , 243,
 
 58 S.Ct. 533
 
 ,
 
 82 L.Ed. 773
 
 (1938) (holding that "[w]illfully ... means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements." (quoting
 
 St. Louis & S.F.R. Co.
 
 v.
 
 United States
 
 ,
 
 169 F. 69
 
 , 71 (8th Cir. 1909) ) );
 
 United States
 
 v.
 
 Murdock
 
 ,
 
 290 U.S. 389
 
 , 395,
 
 54 S.Ct. 223
 
 ,
 
 78 L.Ed. 381
 
 (1933) ("The word ["willfully"] is ... employed to characterize a thing done without ground for believing it is lawful, or conduct marked by careless disregard whether or not one has the right so to act." (citations omitted) ). These cases
 
 [10]
 
 mean that the phrase "willfully violates" in § 7433(e) certainly requires more than mere knowledge of a discharge injunction in order to have a violation of that injunction, especially when the IRS has a reasonable good faith belief that the injunction does not apply.
 

 2.
 
 Circuit Precedent Was Neither Clear nor Unanimous
 

 Even if we could look at circuit and bankruptcy court interpretations of other statutes,
 
 11 U.S.C. §§ 362
 
 (h) and 524, to interpret the phrase "willfully violates," the definition of that phrase must have been clearly established and "settled" at the time § 7433(e) was enacted in order for the majority's argument to succeed.
 

 Armstrong
 
 v.
 
 Exceptional Child Ctr., Inc.
 
 , --- U.S. ----,
 
 135 S.Ct. 1378
 
 , 1386,
 
 191 L.Ed.2d 471
 
 (2015) (declining to apply the prior-construction canon because, inter alia, the courts' interpretation of the pre-existing statutory provision was not "settled" (quoting
 
 Bragdon
 
 ,
 
 524 U.S. at 645
 
 ,
 
 118 S.Ct. 2196
 
 ) );
 
 see also
 

 United States
 
 v.
 
 Torres
 
 (
 
 In re Rivera Torres
 
 ),
 
 432 F.3d 20
 
 , 26 (1st Cir. 2005).
 

 The Supreme Court has only applied a judicial interpretation of a pre-existing statute to a new statute where that interpretation was unanimous or very close to it.
 
 See
 

 Bragdon
 
 ,
 
 524 U.S. at 644-45
 
 ,
 
 118 S.Ct. 2196
 
 (holding that, because "[
 
 e]very
 
 court" that had interpreted the preexisting statute was in agreement, "the new statute should be construed in light of this
 
 unwavering
 
 line of administrative and judicial interpretation" (emphasis added) );
 
 Lorillard
 
 v.
 
 Pons
 
 ,
 
 434 U.S. 575
 
 , 580,
 
 98 S.Ct. 866
 
 ,
 
 55 L.Ed.2d 40
 
 (1978) (applying the prior-construction canon where "every court" to interpret the pre-existing statute had been in agreement).
 

 I do not see the pre- § 7433(e) consensus among those courts that the majority does. Before the enactment of § 7433(e), seven circuits had stated that the phrase "willful violation" in § 362(h), which concerns stays of collection activity once a debtor files for bankruptcy, applied whenever a creditor knew of an automatic stay and violated it.
 
 [11]
 
 However, three circuits had held that more was required in order for the violation of the stay to be "willful." Seven out of ten is a circuit split, not a clear consensus.
 
 [12]
 
 And a stay is not a discharge injunction, and "creditor" encompasses far more than the IRS.
 

 As I read the law of the First Circuit, it specifically allowed for reasonable good faith as a defense to a claimed willful violation of a stay.
 
 See
 

 Nelson
 
 v.
 
 Taglienti
 
 (
 
 In re Nelson
 
 ),
 
 994 F.2d 42
 
 , 45 (1st Cir. 1993) ;
 
 see also
 

 Vahlsing
 
 v.
 
 Commercial Union Ins. Co.
 
 ,
 
 928 F.2d 486
 
 , 490 (1st Cir. 1991). In
 
 Vahlsing
 
 , this court noted that "[v]iolation of [a] stay ... is not a strict liability tort."
 
 928 F.2d at 490
 
 . In
 
 In re Nelson
 
 , this court went further, holding that a bankruptcy stay was not willfully violated because, inter alia, "it was reasonable for [the creditor] to believe that the property was not part of the bankruptcy estate."
 
 994 F.2d at 45
 
 .
 
 In re Nelson
 
 was still controlling law when § 7433(e) was enacted in 1998.
 

 Other circuits had also held that a colorable legal argument of no violation was sufficient to show that a violation of an automatic stay was not willful. The Fifth Circuit had held that a creditor did not "willfully violate[ ] the automatic stay" because her legal position that the stay did not apply was "arguable."
 
 Matter of Sherk
 
 (
 
 In re Sherk
 
 ),
 
 918 F.2d 1170
 
 , 1178 (5th Cir. 1990)
 
 abrogated on other grounds by
 

 Taylor
 
 v.
 
 Freeland & Kronz
 
 ,
 
 503 U.S. 638
 
 , 643,
 
 112 S.Ct. 1644
 
 ,
 
 118 L.Ed.2d 280
 
 (1992). The Sixth Circuit took a similar position in
 
 Andrews University
 
 v.
 
 Merchant
 
 (
 
 In re Merchant
 
 ),
 
 958 F.2d 738
 
 (6th Cir. 1992), finding that a university's violation of an automatic stay "was not willful" without holding that the university did not know of the stay.
 

 Id.
 

 at 740, 742
 
 .
 

 The majority posits that Congress would have ignored these three circuit court opinions when drafting § 7433(e), but provides no credible reason why.
 
 [13]
 
 The majority dismisses these cases as "limited resolutions of idiosyncratic fact patterns," but the holdings on these fact patterns establish the very point that proves the majority wrong. When § 7433(e) was passed in 1998, three circuits had held that a colorable legal position was sufficient to show that a violation of a stay was not willful. These decisions never said that their interpretation of "willful violation" in § 362(h) was affected by the unusual nature of the facts presented. Bankruptcy cases-including this one-often involve unusual facts; the peculiarity of the facts in a couple of the cases involved in the pre-1998 circuit split does not mean that Congress would have interpreted those cases differently or seen a consensus where there was none. The majority argues that
 
 In re Nelson
 
 was limited to its facts but, even if that were true, its holding that a reasonable legal argument was sufficient to render a violation not willful is irreconcilable with the majority's holding in this case.
 

 D.
 
 Congress's Tax Collection Scheme Is Inconsistent with the Majority View
 

 The statutory context for the IRS tax collection scheme, which we are required to consider,
 
 see
 

 SAS Inst.
 
 ,
 
 138 S.Ct. at 1355
 
 , is also inconsistent with the majority view. I am concerned that that majority holding will cause damage to the tax collection scheme. The practical effect of the decision is to impose damages on the IRS when it initiates collection efforts in the face of a discharge injunction that the IRS reasonably and in good faith determines does not apply. The opinion effectively requires the IRS to first go to court and prove its case that the taxes are owed before instituting any collection efforts. But Congress has decided to the contrary.
 

 Congress specifically chose
 
 not
 
 to require the IRS to first obtain a judicial
 determination that an exception to discharge applies before engaging in tax debt collection efforts. Section 523(a) holds that certain types of debts, including tax debts "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax,"
 
 [14]
 
 are excepted from a discharge injunction.
 

 Id.
 

 § 523(a)(1)(C). By contrast, § 523(c)(1) specifies that three particular types of debts are automatically deemed included in a discharge injunction unless or until the creditor initiates a post-injunction adversarial proceeding that yields a judicial determination that the debt is excepted from discharge. Significantly, tax debts are not listed in § 523(c)(1). This means that Congress chose not to require that the IRS seek a pre-collection determination from the bankruptcy court that tax debts are excepted from a discharge injunction. Given that Congress created this exception to discharge and did not require the IRS to seek a pre-collection determination that tax debts are not dischargeable, there is no reason to say that the IRS should incur the risk of having damages found against it even if it acted on a reasonable and good faith belief that the tax debts were excepted from discharge.
 
 [15]
 

 If Congress had intended to require the IRS to seek a pre-collection determination from the bankruptcy court or had intended for the IRS to incur a risk of damages under these circumstances even when it acts reasonably, it would have said so directly.
 
 Epic Sys. Corp.
 
 v.
 
 Lewis
 
 , --- U.S. ----,
 
 138 S.Ct. 1612
 
 , --- L.Ed.2d ----,
 
 2018 WL 2292444
 
 (2018) ("Congress 'does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions-it does not, one might say, hide elephants in mouseholes.' " (quoting
 
 Whitman
 
 v.
 
 Am. Trucking Ass'ns, Inc.
 
 ,
 
 531 U.S. 457
 
 , 468,
 
 121 S.Ct. 903
 
 ,
 
 149 L.Ed.2d 1
 
 (2001) ) ). Yet the majority has, in effect, imposed such a requirement. In doing so, the majority reaches a result that Congress contemplated and explicitly rejected.
 

 I also disagree with the majority's argument that the existence of
 
 26 U.S.C. § 7430
 
 (c)(4)(B) in 1998 shows that Congress intended for § 7433(e) to waive sovereign immunity even where the IRS has a reasonable and good faith belief that the debt was not discharged. Section 7430 is concerned with an altogether different topic. It allows a "prevailing party" in litigation against the IRS to recover "reasonable litigation costs incurred in connection with such court proceeding," under certain circumstances.
 

 Id.
 

 at § 7430(a)(2). And even under § 7430, a victorious taxpayer is not treated as a "prevailing party," and so is unable to recover litigation costs against the IRS, if the IRS's litigation position was "substantially justified."
 

 Id.
 

 at § 7430(c)(4)(B).
 

 Contrary to the majority's assertion, the IRS cannot mitigate the damages it is
 forced to pay to the taxpayer under the majority's interpretation of § 7433(e) by showing a substantial justification for its position under § 7430(c)(4)(B). Section 7430 only covers "litigation and administrative costs," so having a substantially justified position does not allow the IRS to mitigate the § 7433(e) damages the majority would force it to pay. Parties are routinely required to cover their own costs; § 7430's cost-shifting provision has no bearing on § 7433(e) damages.
 

 It is not true, as the majority posits, that adopting the IRS's definition of "willfully violates" "would render § 7433(e) a near nullity." Adopting the IRS's definition would only free it to collect tax debts that it reasonably believes are not covered by a discharge injunction or automatic stay. If the IRS were to collect other types of tax debts not exempted from discharge by § 523, that would present a different issue under § 7433(e), which is not before us.
 

 The majority appears skeptical that courts would ever find that the IRS has violated the reasonableness requirement. Several bodies of law instruct courts to inquire into the reasonableness of an actor's behavior, including torts,
 
 see, e.g.
 
 , Restatement (Second) of Torts § 282 (1965), and administrative law,
 
 see, e.g.
 
 ,
 
 Chevron, U.S.A., Inc.
 
 v.
 
 Nat. Res. Def. Council, Inc.
 
 ,
 
 467 U.S. 837
 
 , 844,
 
 104 S.Ct. 2778
 
 ,
 
 81 L.Ed.2d 694
 
 (1984). The use of a reasonableness standard in those areas does not render the relevant statutes near nullities.
 

 In my view, the intent of Congress is clearly not to waive sovereign immunity in these circumstances. But even if there were ambiguity, that ambiguity itself would require that we find no waiver of sovereign immunity. I respectfully dissent.
 

 Franconia Assocs.
 
 v.
 
 United States
 
 ,
 
 536 U.S. 129
 
 ,
 
 122 S.Ct. 1993
 
 ,
 
 153 L.Ed.2d 132
 
 (2002), is cited by the majority, but it has nothing to do with the issues presented here. The limitation principle referred to there was not about sovereign immunity at all, but about whether a special accrual rule from a statute of limitations should be carved out for the government when there is a repudiation of a Farmer's Home Administration loan contract.
 
 See
 

 id.
 

 at 145
 
 ,
 
 122 S.Ct. 1993
 
 . It is true that
 
 Franconia
 
 cites to language about sovereign immunity in two other cases, but once again those cases assist the dissent.
 
 Irwin
 
 involved an explicit statutory waiver of immunity and the question presented was whether the doctrine of equitable tolling fell within that exception.
 
 498 U.S. at 95
 
 ,
 
 111 S.Ct. 453
 
 . The same is true of the question presented in
 
 Bowen
 
 v.
 
 City of New York
 
 ,
 
 476 U.S. 467
 
 ,
 
 106 S.Ct. 2022
 
 ,
 
 90 L.Ed.2d 462
 
 (1986), where Congress had explicitly waived sovereign immunity as to certain social security suits and the issue was whether the waiver included recognition of the equitable tolling doctrine.
 
 See
 

 id.
 

 at 479-80
 
 ,
 
 106 S.Ct. 2022
 
 .
 

 There is no claim the IRS acted recklessly.
 

 The Supreme Court in
 
 Safeco Ins. Co. of Am.
 
 v.
 
 Burr
 
 ,
 
 551 U.S. 47
 
 ,
 
 127 S.Ct. 2201
 
 ,
 
 167 L.Ed.2d 1045
 
 (2007), stated that "where willfulness is a statutory condition of civil liability," that term typically covers "knowing" and "reckless" violations.
 

 Id.
 

 at 57
 
 ,
 
 127 S.Ct. 2201
 
 .
 

 The majority also references
 
 Hardy
 
 v.
 
 IRS
 
 , (
 
 In re Hardy
 
 ),
 
 97 F.3d 1384
 
 (11th Cir. 1996), which interpreted the phrase "willful violation" in the § 524 context. That case is of little help because it was the only circuit case addressing that definition in the § 524 context when § 7433(e) was passed, meaning the § 524 case law was not "clearly established."
 
 In re Rivera Torres
 
 ,
 
 432 F.3d at 26
 
 .
 

 In order to support its argument that Congress would have understood "willfully violates" to cover situations where the IRS acted reasonably and in good faith, the majority looks to circuit case law post-dating the enactment of § 7433(e). Cases from the 2000s do not help us determine how Congress would have understood a phrase in 1998. Even so, there is no consensus on the definition of "willful" in the § 524 discharge injunction context. The Ninth Circuit has held that a good faith belief that one is not violating a discharge injunction is sufficient to show that there was no "willful violation" of the discharge injunction.
 
 See
 

 Lorenzen
 
 v.
 
 Taggert
 
 (
 
 In re Taggert
 
 ),
 
 888 F.3d 438
 
 , 444 (9th Cir. 2018). Indeed, the Ninth Circuit does not even impose a reasonableness requirement.
 

 Id.
 

 ("the creditor's good faith belief that the discharge injunction does not apply to the creditor's claim precludes a finding of contempt,
 
 even if the creditor's belief is unreasonable
 
 " (emphasis added) (citing
 
 Corning
 
 v.
 
 Corning
 
 (
 
 In re Zilog, Inc.
 
 ),
 
 450 F.3d 996
 
 , 1009 n.14 (9th Cir. 2006) ) ).
 

 The same is true of the majority's reference to the Internal Revenue Manual. A citation to the current Manual does not tell us how Congress would have interpreted "willfully violates" in 1998. As the majority concedes, the Manual does not even have the force of law.
 

 The majority attempts to deny the existence of this circuit split by pointing to a handful of lower and Article I court cases that are not in accordance with the precedent of their respective circuits. These cannot minimize the circuit split. The First, Fifth, and Sixth Circuits had held that mere knowledge of a stay was insufficient to show a "willful violation."
 

 The majority similarly argues that Congress would have ignored these cases when drafting § 7433(e) because they lack "a broader analysis of the meaning of 'willful violation.' " First, many of the circuit cases adopting the majority's favored definition of "willful violation" also provide little analysis.
 
 See, e.g.
 
 ,
 
 Price
 
 v.
 
 United States
 
 (
 
 In re Price
 
 ),
 
 42 F.3d 1068
 
 , 1071 (7th Cir. 1994) ;
 
 Goichman
 
 v.
 
 Bloom
 
 (
 
 In re Bloom
 
 ),
 
 875 F.2d 224
 
 , 227 (9th Cir. 1989). Second, that the analysis may have been limited in these three cases is irrelevant. Three circuits had held that a colorable legal argument was sufficient to show that a violation was not "willful" under § 362(h). That is enough to find that the meaning of "willful violation" was not clearly established, regardless of how much analysis the three circuits provided.
 

 The issue of dischargeability of debts resulting from a debtor's dishonesty is important, as evidenced by the grant of certiorari in
 
 Appling
 
 v.
 
 Lamar, Archer & Cofrin, LLP
 
 (
 
 In re Appling
 
 ),
 
 848 F.3d 953
 
 (11th Cir. 2017),
 
 cert. granted
 
 , --- U.S. ----,
 
 138 S.Ct. 734
 
 ,
 
 199 L.Ed.2d 601
 
 (Jan. 12, 2018) (No. 16-1215).
 
 See
 

 id.
 
 at 955 (holding that a debt was not excepted from discharge under § 523(a)(2) because the debtor's misrepresentation about a future cash flow amounted to a misrepresentation about his financial condition and was not made in writing).
 

 The majority argues that Congress clearly used the phrase "willfully violates" in order to "directly link" § 7433(e) to the "willful violation" standard used in § 362(h). But the phrase "willfully violates" relates just as directly to Supreme Court precedent interpreting similar phrases. In any case, a "direct link" to the standard used for § 362(h) is only helpful to the majority to the extent there was a consensus around that standard when § 7433(e) was passed, and there was none.